SUMMERS, Justice.
Appellants Albert and Ruby Hawthorne were jointly charged with possession of heroin on October 29, 1975, a crime denounced by Section 966 of Title 40 of the Revised Statutes. In a jury trial on January 13, 1977 they were found guilty as charged. Prior to sentencing, bills of information were filed under the Habitual Offender Law charging each appellant with a prior felony conviction. La.Rev.Stat. 15:529.1. A hearing was held on these recidivism *919 charges and appellants were found guilty. On the State’s motion each appellant was sentenced to imprisonment for nineteen years as an habitual offender under the provisions of the Habitual Offender Law, and without entitlement to diminution of sentence for good behavior as authorized by Section 571.3 of Title 15 of the Revised Statutes.[1]
Only those assignments of error urged on this appeal are reviewed in this opinion.
Assignments 1, 2 and 17: Defense counsel declared in his opening statement that he intended to prove that appellant Ruby Hawthorne’s daughter, Sheryl Burton, planted narcotics in the residence occupied by Albert and Ruby Hawthorne in order to get Albert in trouble because she disliked him, and that it was the daughter Sheryl Burton who called the police and told them that narcotics were in the house. Defense counsel also stated that, without intending such a result, Sheryl’s plan also implicated her mother, Ruby Hawthorne, in the narcotic offense. Furthermore, according to defense counsel’s opening statement, appellants and other witnesses would testify that Albert was beaten by the police in his own house.
' When the State’s attorney objected to the statement that the police had beaten Albert as being irrelevant, the trial judge sustained the objection, ruling that no foundation had been laid to prove police beatings. In addition, he ruled that he would limit defense counsel in his opening statement to what he intended to prove. Because of this ruling defense counsel moved for a mistrial, which was denied. Thereafter the issue thus presented was urged as a basis for a new trial.
The correctness of the ruling, that a foundation must be laid before the defense can prove that the police beat Albert, is questionable and not supported on any rational basis by the trial judge or in the State’s argument at the trial or in brief. At the same time the defense makes no showing that the beating is relevant to the issue of possession of heroin.
In any event, the issue presents no prejudice to the defense. During the trial the State introduced evidence in an effort to show that Albert received injuries when he resisted arrest and that the arresting officers were compelled to subdue him. In doing so they testified they did not brutalize him even though Albert thrashed about during the encounter, requiring three policemen to quiet him. Apparently, because of the exertion, Albert passed out. He was revived by ingestion of sugar watér and syrup.
As the police left the house with Albert on the way to the hospital, a defense witness testified that Albert appeared sick, and blood was streaming from his mouth or nose. Albert’s mother-in-law saw him in the hospital that night. She testified for the defense that Albert was bleeding from the mouth, had scratches on his ear, and his face appeared to be “kind of beat in.”
In rebuttal the State produced the doctor who examined Albert when he entered the hospital. The doctor saw no blood or cuts on Albert’s mouth, no scratches across his neck or the side of his face, or swelling in Albert’s hands. He did observe, however, an abrasion on Albert’s left wrist.
*920 It is evident from this summary of the evidence on the subject, that the question of police brutality was fully explored and the limitation of defense counsel’s opening statement was inconsequential.
On appeal the concern is not the technical correctness of the ruling of the trial judge; appeals by the accused are designed to rectify injuries to him caused by improper trial court conduct, or by departure from a constitutional norm or a specific legislative enactment. La.Code Crim.Pro. art. 921.
Assignments 8, 9 and 12: Officer Robert McNeil, assigned to the Narcotic and Drug Abuse Section of the New Orleans Police, testified that early on October 29, 1975 he and several other officers obtained a search warrant to search the residence at 2026 Second Street, the Hawthorne residence. Upon entry they found Ruby and Albert Hawthorne and another black male present in the front room. Albert was presented with a copy of the warrant, and all those present were advised of their rights and informed that at that time they were under investigation for possession of narcotics. A detailed and systematic search of the residence followed, resulting in the discovery of two bags, or tinfoil packages, containing brown powder inside a radio on the refrigerator in the kitchen. At the same time that Officer McNeil discovered the two bags of brown powder he believed to be heroin, he found a larger piece of tinfoil containing a white powder. This latter item became Exhibit S-4 at the trial.
The defense contends that the State introduced the white powder (S-4) into evidence without identifying the substance either chemically or by a scientific or commercial name. Further, it is asserted the prosecutor, by intimation, gave the jury the impression that this white powder was a “cutting substance” used by dope “pushers” to dilute narcotics. By doing so, the argument goes, defendants were inferentially identified as “pushers” or distributors of narcotics, a crime more heinous and unpopular than possession of narcotics, the crime charged. From this premise defense counsel reasons that the State introduced evidence of other crimes, impermissible under the rule of State v. Prieur, 277 So.2d 126 (La.1973). The contention is not well-founded.
The trial judge sustained defense counsel’s objection to the prosecutor’s questions to Officer McNeil: “Have you ever heard of a cutting substance?” and “My question is what is a cutting substance used for if someone were merely a drug user?” The trial judge also refused to permit Officer McNeil to refer to S-4 as a “cutting substance” because it had not been properly identified, and S-4 was only admitted into evidence for the purpose of showing that it was not heroin, a fact to which a state witness testified. Therefore, S — 4 was never shown to be a cutting substance, and it was not evidence of the other more heinous crime of distribution of heroin.
Assignment 11: On direct examination Officer McNeil testified that when Albert and Ruby Hawthorne were arrested they were not transported to the narcotics office as they would have been under normal procedure because Albert wanted to go to the hospital. Ordinarily, in a narcotics case, the accused is examined for track marks at the narcotics office. In this instance, however, McNeil testified the best he could do was to perform a cursory examination of Albert’s arm in the hall at the hospital. In doing so active track marks were found on both arms.
When cross-examined by defense counsel, McNeil was asked if he had testified on direct that he examined Ruby’s arm .and found track marks. He replied that he had not examined Ruby’s arm but that he did examine Albert’s arm and found track marks. He was then asked if he had recorded that finding “by diagram”. When he answered that his only chance to examine Albert’s arm was while he was lying on a couch in the hospital hallway, he was again asked by defense counsel if he had recorded this fact. He replied that he had not. The trial judge, in an apparent effort to clarify the answers, then asked if these facts were in McNeil’s police report, and he answered that they were not.
*921 On redirect examination the prosecutor presented the police report to McNeil to refresh his memory. After reading the report, McNeil stated that the reference to “Hawthorne” in the report was a reference to Ruby, and that the report contained no reference to the fact that he had examined Albert’s arm and found track marks there. At the conclusion of McNeil’s testimony, defense counsel called for the production of the report for examination and the trial judge denied the request. Defense counsel objected and the ruling is assigned as error.
There are several factors which militate against the defense contention that the police report should have been produced. McNeil’s testimony that he examined Albert’s arm and found track marks was in no way grounded upon anything contained in the police report. By his persistent questioning defense counsel elicited from McNeil the fact that he did not record this finding. In connection with the questions and answers, the trial judge asked McNeil if the information was contained in the police report. Thus, in effect, defense counsel prompted the use of the report, despite the fact that the report played no part in McNeil’s testimony relating to track marks. State v. Graves, 301 So.2d 864 (La.1974).
McNeil’s testimony relative to Albert’s track marks was an independent recollection of the events which transpired on the night of the crime. It is only when the witness has no independent recollection of what occurred, and his testimony is the product of what he has just read in his report prepared at an earlier time, that the defense is entitled to examine the report for the purpose of cross-examining the witness. La.Rev.Stat. 15:279; State v. Perkins, 310 So.2d 591 (La.1975) and State v. Tharp, 284 So.2d 536 (La.1973).
Assignments 14 and 17: Sheryl Burton testified for the State. She is the eighteen-year-old daughter of Ruby Hawthorne and step-daughter of Albert Hawthorne. It was her trip to the police which resulted in the issuance of the search warrant and the arrest of appellants. She told the jury that it was she who had planted the heroin in the radio in the Hawthorne kitchen. She also testified, apparently to the surprise of defense counsel, that she had signed “on a lie detector test.” Then, under questioning by defense counsel, she stated that her father and mother were not present at the time, she did not understand what was going on, the test was administered at police headquarters, and the police had picked her up at her house and taken her back home.
Although no results of the lie detector test were permitted in evidence, in his closing argument defense counsel sought to discredit Sheryl’s testimony in that regard by saying:
“When Sheryl Burton took the stand and said she took a lie detector test, did she describe the machine? Were any questions asked of you if things were put on her wrists, her body, her head? How do I know? You saw the girl. I’m not saying anything about it. She appears to be a little slow. They may have shown her a machine like this and said “talk into it, that’s going to tell us whether you’re telling the truth or not.”
At this point the State’s attorney objected, and the trial judge sustained the objection on the ground that the remarks were not related to any evidence brought out on the witness stand. The ruling was correct.
Article 774 of the Code of Criminal Procedure requires that closing argument be confined to evidence admitted, to the lack of evidence, to conclusions of fact that the State or defendant may draw therefrom, and to the law applicable to the case. The quoted part of the defense argument was not supported by the evidence.
Assignment 16: In his closing argument the prosecutor said:
“When Mr. Masinter [defense counsel] says you’re not the conscience of this society, I believe he’s wrong. The reason why? You’re picked from all walks of society. Some of you are rich. Some of you are poor. Some of you live in big houses. Some in small. But, you represent a cross-section of everybody in this *922 City. And, if you return with a verdict of guilty as charged or with a verdict of not guilty, you’re declaring what the community thinks of people who use heroin. And, you [are] declaring that in this community, that you think that it may be o.k. for users of heroin, who possess heroin in that house to do so, in their own home. And, you’re saying in essence that you do not agree with the law that it should be against the law.”
Defense counsel objected and the trial judge admonished the jury that he would instruct them on the law to apply to the case. In view of the admonition, the prosecutor’s argument does not amount to reversible error. Compare State v. Quallo, 353 So.2d 978 (La.1977). See also, State v. Coates, 273 So.2d 282 (La.1973).
For the reasons assigned, the convictions and sentences are affirmed.
DIXON, J., concurs.
TATE, J., dissents and assigns reasons.
CALOGERO and DENNIS, JJ., dissent for reasons assigned by TATE, J.

. La.Rev.Stat. 15:571.3:
“A. Every prisoner in a parish prison convicted of a misdemeanor and sentenced to imprisonment for one year or more may earn a diminution of sentence, to be known as “good time,” by good behavior, as follows: two months for the first year; two months for the second year; three months each for the third and fourth years; and four months for each subsequent year.
“The sheriff of the parish in which the conviction was had shall have the sole power to determine when good time has been earned on which diminution of sentence may be allowed.
“B. Every prisoner in the state penitentiary who has been convicted of a felony and sentenced to imprisonment for one year or more may earn a diminution of sentence by good behavior, to be known as “good time.” The warden of the state penitentiary shall have the sole power to determine when good time has been earned on which diminution of sentence may be allowed. The amount of diminution of sentence allowed shall be as otherwise provided by law.”