GUIDRY, Judge.
On August 12,1985, defendant-appellant, Calvin J. Guillory a/k/a John J. (Joe-Joe) Williams, was charged by a bill of information with two counts of distribution of marijuana, a violation of La.R.S. 40:966(A)(1). The case was tried to a twelve person jury commencing April 29, 1986. The jury returned a verdict of guilty as charged on both counts on May 2,1986, and sentencing was set for May 19, 1986. A notice of intent to file a multiple offender bill having been previously filed by the State, the habitual offender hearing was combined with the sentencing proceedings. The defendant, after being advised of his constitutional rights by the court, admitted to being a second felony offender and was sentenced to concurrent terms of six years at hard labor on each count. The probation for a previous simple burglary conviction was revoked and Guillory was ordered to serve the original sentence on the burglary conviction concurrent with the sentences imposed.
The defendant appeals his conviction and sentence on the distribution of marijuana charges assigning the following as errors:
1. The trial court erred in denying the motion to suppress certain in-court and out-of-court identifications.
2. The trial court unreasonably restricted defendant’s cross examination of Danielle Belson.
3. The trial court erred in allowing defendant’s “arrest report” to be admitted into evidence.
4. The trial court erred in refusing to allow defense examination of a report read from by witness, Robert McGarity.
FACTS
Danielle Belson, an undercover narcotics agent, and Robert McGarity, a narcotics detective with the Calcasieu Parish Sheriff’s Office, arranged for drug transactions on September 11 and 20, 1984, between themselves and an individual calling himself Joe-Joe Williams. On September 11, 1984, at around 7:00 p.m. Belson called the subject and agreed to buy one pound of marijuana for $925.00. Belson and McGarity then drove to a house on Franklin Street where the subject known as Joe-Joe advised them that he had to baby-sit and could not carry out the transaction but that his cousin, Garlow, could take them to a location where they could obtain the marijuana. As the officers and Garlow drove to Taylor Street, Belson gave Garlow the $925.00. At Taylor Street, Garlow exited the car and a short time later returned with a brown paper bag containing six clear plastic bags each containing a substance later identified as marijuana. According to Belson, as Garlow was dropped off at the house on Franklin Street, defendant came out on the porch and informed Belson she could obtain marijuana from him in the future.
Belson contacted Joe-Joe again on September 20, 1984, and agreed to purchase one-fourth (¼) pound of marijuana for $250.00. She and Detective McGarity made arrangements to meet him at the corner of Opelousas and Grace Streets that same evening. When Belson and McGarity arrived at the above-described location, Guillory entered their truck and directed them to drive to Johnson Hall Apartments in Lake Charles where he exited the vehicle and entered an apartment. However, he returned empty-handed stating that they had arrived too late. He then instructed them to drive to Westlake to a Wizard Store on Sampson Street, where the deal could be completed. While Belson and McGarity waited, Joe-Joe walked behind the Wizard Store toward some buildings. Subsequently, the defendant returned with a clear plastic bag containing green plantlike material which was later identified as marijuana.
Approximately five months later on February 14, 1985, the defendant, Calvin Guil- *261 lory aka John (Joe-Joe) Williams, was arrested on the basis of a warrant issued for a John Williams. At that time, the defendant claimed that he was not John Williams. However, at the time of arrest, at a preliminary hearing, at a motion to suppress, and at trial, the officers identified the defendant as the “Joe-Joe” Williams with whom they had been involved in the drug transactions on September 11 and 20, 1984.
ASSIGNMENT OF ERROR NO. 1
By this assignment of error the defendant claims that the trial court erred in denying the motion to suppress certain in-court and out-of-court identifications. He claims that the identifications were suggestive.
At the hearing on the motion to suppress, the defendant testified that when he was arrested and brought to the jail, McGarity, whom he claims he had never seen before, stated that the defendant did not look like the John Williams with whom he had dealt. The defendant also testified that although his nickname was Joe-Joe and his stepfather’s last name was Williams, he never called himself John Williams.
Detective McGarity, on the other hand, testified that he recognized the defendant as he was brought into the jail and that as he called him Joe-Joe, the defendant claimed they had the “wrong one”. McGarity admitted that, as the officers were bringing the defendant into the jail, one officer did tell him that the defendant was Joe-Joe. McGarity, however, explained that the officer’s remark was after McGarity had already spoken to the defendant. He testified that without the deputy’s comment, he, nevertheless, would have identified the defendant.
The defendant alleges that McGarity’s out-of-court identification was not valid, but based on suggestions. He claims that McGarity did not recognize the defendant but identified him as the suspect on the basis of the officer’s remarks.
State v. Culpepper, 434 So.2d 76 at 78 (La.App. 5th Cir.1982), states:
“The defendant bears the burden of establishing that pre-trial identification procedures are suggestive. C.Cr.P. 703.
In reviewing the identification procedure, the court must determine whether it was so unnecessarily suggestive and so conducive to an irreparably mistaken identification that the defendant was denied due process of law. State v. Bick-ham, 404 So2d 929 (La.1981).
Even if suggestive identification procedures are proven by the defense, it is the likelihood of misidentification and not the mere existence of suggestiveness, which violates due process. Manson v. Brathwaite, 432 U.S. 98, 97 S.Ct. 2243, 53 L.Ed.2d 140 (1977), State v. Williams, 375 So2d 364 (La.1979), State, ex rel., Fields v. Maggio, 368 So2d 1016 (La.1979).”
In this case, there appears to be conflicting testimony as to the suggestiveness of the identification. The defendant testified that McGarity did not recognize him and identified him as Joe-Joe on the basis of the officer’s comment while McGarity testified that he identified the defendant as Joe-Joe before the officer’s comment. The Louisiana Supreme Court, in addressing a similar situation in State v. Vessell, 450 So.2d 938 (La.1984), stated:
“... We are faced, therefore, with contradictory testimony which calls for a determination of the credibility of the witnesses. The trial court obviously disbelieved the version presented by Ves-sell and found credible the testimony of Officers Cutrer and LeBlanc. Such a determination is within the sound discretion of the trial court and, like all questions of fact, is entitled to great weight and will not be disturbed unless clearly contrary to the evidence. State v. Bell, 395 So.2d 805 (La.1981); State v. Hudson, 361 So.2d 858 (La.1978); State v. Cobbs, 350 So.2d 168 (La.1977).”
We find no error in the trial judge’s decision to accept the testimony of the police officer, rather than the self-serving testimony of the defendant. Accordingly, *262 we find no denial of due process in the out-of-court identification.
The defendant also alleges that the in-court identification was not valid, in that, it was based on the suggestive identification in February. Even if a pre-trial identification is the result of an impermissible suggestion, an in-court identification can be admissible if there is an independent basis for that identification. State v. Lindsey, 404 So.2d 466 (La.1981); State v. Culpepper, supra.
In State v. Prudholm, 446 So.2d 729 (La.1984), the Supreme Court reviewed the burden a defendant must carry in attempting to suppress an identification:
“A defendant attempting to suppress an identification must prove both that the identification itself was suggestive and that there was a likelihood of mis-identification as a result of the identification procedure. State v. Chaney, 423 So.2d 1092, 1098 (La.1982); Manson v. Brathwaite, 432 U.S. 98, 97 S.Ct. 2243, 53 L.Ed.2d 140 (1977). In Manson, the court considered these five factors in determining whether the identification was suggestive: (1) the witness’s opportunity to view the defendant at the time the crime was committed; (2) the degree of attention paid by the witness during the commission of the crime; (3) the accuracy of any prior description; (4) the level of the witness’s certainty displayed at the time of identification; and (5) the length of time elapsed between the crime and the identification.”
Even if the February identification had been suggestive, it is clear that, applying the Manson factors to the present case, the in-court identification had an independent reliable basis which was neither suggestive nor prone to misidentification. Detective McGarity, a trained narcotics investigator, was involved in two separate drug transactions with the defendant. While the first transaction was not protracted, the second took place over a period of approximately two hours duration. Considering these circumstances, we find the in-court identification to have sufficient factual basis to establish its reliability. This assignment is without merit.
ASSIGNMENT OF ERROR NO. 2
By this assignment of error the defendant claims that the trial court unreasonably restricted defendant’s cross-examination of Officer Danielle Belson. He argues that the court erroneously sustained the State’s objections to questions by the defense, particularly those questions attempting to establish the number of undercover narcotic cases Officer Belson had “made”. Defendant asserts that by curtailing the cross-examination, the court did not permit counsel to delve fully into the issue of a possible mistaken identification. La.R.S. 15:275 provides as follows:
“In the discipline of his court, the trial judge is vested with a sound discretion to stop the prolonged, unnecessary and irrelevant examination of a witness, whether such examination be direct or cross, and even though no objection be urged by counsel.”
The right to cross-examination is a means by which the credibility of a witness is tested, but this right is subject to the broad discretion of the trial judge to prevent repetitive and harassing questioning. State v. Russell, 434 So.2d 460 (La.App. 2d Cir. 1983); State v. Senegal, 316 So.2d 124 (La.1975); Davis v. Alaska, 415 U.S. 308, 94 S.Ct. 1105, 39 L.Ed.2d 347 (1974). A conviction will, thus, not be reversed on the basis of a trial judge’s limiting cross-examination unless the defendant shows that there was an abuse of discretion and that he was prejudiced by the limitation of the cross-examination of a witness. State v. Savoie, 448 So.2d 129 (La.App. 1st Cir. 1984), writ denied, 449 So.2d 1345 (La.1985); State v. Thomas, 470 So.2d 413 (La. App. 3rd Cir.1985).
The record reveals that defense counsel repeatedly (for approximately four pages of transcript) questioned the witness about the number of cases in which she had participated. Despite the ultimate restriction by the trial judge of counsel’s repetitive questioning, the defense was able to *263 establish that Officer Belson had been involved in more than 200 cases. Thus, we find that defendant’s counsel had achieved his purpose of demonstrating to the jury the possibility that, because of the large number of cases in which she had participated, the witness could have been mistaken in her identification of the defendant. The trial judge’s ruling prohibiting further examination was not prejudicial to the defendant. This assignment also lacks merit.
ASSIGNMENT OF ERROR NO. 3
By this assignment of error the defendant urges that the trial court erred in allowing the defendant’s “arrest report” to be admitted into evidence. The defendant argues that the arrest report was hearsay evidence and that, under the circumstances of the case, could not be considered a business record exception to the hearsay rule.
During the examination of Deputy Folds, the State attempted to introduce into evidence an arrest report which identified the defendant as John (Joe-Joe) Williams. Detective Folds testified that when the defendant was brought into the jail, he (the defendant) did not have a driver’s license in his possession and he verbally gave the information on the arrest report to Deputy Veronica Paul in Folds’ presence. According to Folds, the arrest report was typed by Deputy Paul on the night of defendant’s arrest. The defendant objected on the basis that Folds was not qualified as a custodian of the report. The State then introduced as a witness Eleaner Gibson, a secretary in the District Attorney’s office, who identified the report and testified that it had been transmitted to her by the Calca-sieu Parish Sheriff’s Office and had been in her custody thereafter. The defendant’s objections that the State had not shown the preparation of the arrest in the normal course of business and that the arrest report was “introduced to corroborate a witness who has not been impeached yet” were overruled and the report was admitted into evidence.
The business records exception to the inadmissibility of hearsay evidence was discussed by the Louisiana Supreme Court in State v. Vessell, supra, at 944, wherein the court stated:
“... In State ¶. Monroe, 345 So.2d 1185 (La.1977), this court reaffirmed its original formulation of the business records exception to the hearsay rule:
‘Before the exception may be invoked by the State against the defendant, allowing introduction of a permanent record made in the ordinary course of business from personal knowledge of the facts recorded, or from information furnished to one having business duty to observe and report the facts, it must be shown that the person who made the record is genuinely unavailable for testimony, that he had no strong motive to misrepresent, and that in all probability the evidence is trustworthy.’ Id. at 1190.
Two years later this court referred to the requirement set out in Monroe and noted:
‘In view of the constitutional right of an accused to confront and cross-examine the witnesses against him, U.S. Const. Amend. VI: La. Const. 1974, art. I, § 16, and the statutory prohibition against hearsay evidence, except as provided by law, La.R.S. 15:434, a broader business records exception for the admission of hearsay against a defendant in a criminal prosecution is unwarranted. State v. Perniciaro, 374 So.2d 1244, 1247 (La.1979); See also, State v. Stokes, 433 So.2d 96 (La.1983), and State v. Vaughn, 378 So.2d 905 (La.1979).’ ”
In the case sub judice, it was error for the trial judge to admit the arrest report. First, the State failed to show that Deputy Paul, who typed the report, was unavailable to testify; and, second, Eleaner Gibson, whose testimony the State elicited in an attempt to show the report was made in the normal course of business, was not qualified, as an employee of the District Attorney’s office, to authenticate a document generated in the Calcasieu Parish Sheriff’s office by one of its employees.
*264 Our finding that the trial judge erred in admitting the arrest report does not, however, automatically warrant a reversal of defendant’s conviction.
“LSA-C.Cr.P. art. 921 provides that: A judgment or ruling shall not be reversed by an appellate court because of any error, defect, irregularity, or variance which does not affect substantial rights of the accused.
In State v. Gibson, 391 So.2d 421 (La.1980), the Louisiana Supreme Court adopted the ‘harmless error’ test of Chapman v. California, 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967). Under the ‘harmless error’ test, it must be determined ‘whether there is a reasonable possibility that the admission or exclusion of certain evidence, depending on the case, might have contributed to the conviction’ and further that the reviewing court ‘must be able to declare that the error was “harmless beyond a reasonable doubt.” ’ State v. Martin, 458 So.2d 454, 459 (La.1984); Gibson, supra.”
State v. Ross, 474 So.2d 30 (La.App. 4th Cir.1985) at 33. See also State v. Vessell, supra.
In the instant ease, Detective Folds had already testified that he was present and heard the defendant supply the name John Williams to Deputy Paul so that she could prepare the report. Since the information in the report had been given to the jury without objection, the admission of the report itself (which contained the same information) did not prejudice the defendant’s rights. State v. Foote, 379 So.2d 1058 (La. 1980), rehearing denied. This assignment lacks merit.
ASSIGNMENT OF ERROR NO. 4
By this assignment of error the defendant urges that the trial court erred in refusing to allow the defense examination of a report allegedly read from by Detective Robert McGarity.
At the hearing on a motion to suppress, during cross-examination, McGarity testified that he encountered the subject for the first time on September 20, 1984, at Grace and Opelousas Streets. Yet at trial, McGarity testified that he had initially met the subject on September 11, 1984. When defense counsel questioned the witness about the discrepancy, the witness admitted that he had been confused about the dates but not about the events. During redirect examination at trial, in response to the State’s questions concerning the discrepancy, the witness again stated he had mistakenly referred to September 20 instead of September 11 and testified that he had filled out a surveillance report after each incident. The State then presented the witness with the surveillance reports, which he identified as the reports he made on September 11 and 20 following his encounter with the subject he knew as Joe-Joe Williams. The defense then asked to examine the reports. The trial court was at first inclined to permit copies to be furnished to the defense, but then on the basis of State v. Hawthorne, 364 So.2d 917 (La.1978), cited by the prosecution, reversed its prior ruling.
“As a rule, the state is not required to produce for inspection a police report or a prior statement for use in cross-examination of a state witness for impeachment purposes unless:
(1) the witness has physical possession of the report on the stand and testified from it. State v. Latin, 412 So.2d 1357 (La.1982); State v. Perkins, 310 So.2d 591 (La.1975); or
(2) the witness testified exclusively from his past recollection recorded even though he does not have physical possession of the report on the stand. State v. Latin, 412 So.2d 1357 (La. 1982); State v. Banks, 341 So.2d 394 (La.1976); or
(3) it is established that there is an inconsistency between the witness’ testimony at trial and his prior statement. State v. Breaux, 366 So.2d 1375 (La.1978); State v. Lovett, 359 So.2d 163 (La.1978).”
State v. Johnson, 438 So.2d 1091 (La.1983), rehearing denied. While the witness had *265 physical possession of the two reports on the stand, there is no indication in the record that he did any more than identify the documents. At that point, the witness had already completed his testimony as to the facts of the case. Furthermore, Detective McGarity’s initial confusion of the dates of the two closely related incidents, convinces us that he was strictly relying on his memory when he testified. Hawthorne, supra, at pg. 921, states:
“... It is only when the witness has no independent recollection of what occurred, and his testimony is the product of what he has just read in his report prepared at an earlier time, that the defense is entitled to examine the report for the purpose of cross-examining the witness. La.Rev.Stat. 15:279; State v. Perkins, 310 So.2d 591 (La.1975) and State v. Tharp, 284 So.2d 536 (La.1973).”
This assignment of error is also without merit.
Accordingly, for the reasons stated, defendant’s convictions and the sentences imposed are affirmed.
AFFIRMED.