688 So.2d 1262 (1997)
STATE of Louisiana, Appellee,
v.
Anthony L. TAYLOR, Defendant-Appellant.
No. CR96-1043.
Court of Appeal of Louisiana, Third Circuit.
February 5, 1997.
*1265 David Wayne Burton, De Ridder, for State of Louisiana.
Charles A. "Sam" Jones, III, De Ridder, for Anthony L. Taylor.
Before SAUNDERS, PETERS and AMY, JJ.
AMY, Judge.
This appeal arises from a case in which Defendant, Anthony L. Taylor, was convicted of aggravated battery, a violation of La.R.S. 14:34, and conspiracy to commit aggravated battery, a violation La.R.S. 14:26. Defendant appeals his convictions and sentences. We affirm.

DISCUSSION OF THE RECORD
On April 9, 1995, Winston Sheppard, a resident of Houston, Texas, was visiting his fiancée, Eurica Johnson, and their son in DeRidder, Louisiana. At approximately 5:00 p.m. on that day, they went to a local park, where Sheppard began playing basketball with a group of local men, including the defendant. During the basketball game, Defendant played on the opposing team, but he and the victim did not argue. However, Sheppard did have verbal exchanges with a spectator, Timothy "Peabody" Bradford. One of Johnson's brothers, Leonard, warned Sheppard not to argue. Leonard Johnson testified that he subsequently heard the defendant tell Peabody they would "get" Sheppard later.
After the game was over, Sheppard sat on a bench next to Peabody. At this time, Sheppard testified that the defendant ran in front of where he and Peabody were sitting and told Peabody, "It's on," while grabbing at his own front pocket.
Sheppard rose and crossed to where his fiancée and son were standing. While he was playing with his son, Peabody approached him from the rear, wielding a tree branch. Sheppard evaded Peabody, who was then restrained by another man, Chris Husband. Leonard Johnson then advised his sister and Sheppard to leave the park. They got in their car but apparently were unable to leave immediately because they were blocked by people or another car. A hostile crowd quickly gathered at the car; Peabody attacked again with the stick and broke it on the car. Sheppard was in the car, but had not closed the door. Peabody then threw a beer bottle into the vehicle and struck Ms. Johnson in the ribs. Sheppard exited the car. Although the victim tried to defuse the situation, Peabody launched a kick. Deciding the mob was a danger to Ms. Johnson and his son, the victim ran from the car, pursued by approximately fifteen people.
*1266 The mob caught up with Sheppard at the edge of the park and continued punching and kicking him from all directions. Sheppard testified that, in the midst of the chaos, Defendant was hitting him in the chest where he was wounded.
At some point Chris Husband, who is a large man, intervened physically, and the mob subsided. However, there was one final attack, as yet another man threw a forty-ounce beer bottle into Sheppard's face, lacerating it and permanently blinding his right eye. Ms. Johnson pulled up, calling for him to get in the car, which he did. They left and sought medical and police assistance.
Defendant was charged by bill of information with aggravated battery, a violation of La.R.S. 14:34, and with conspiracy to commit aggravated battery, a violation of La.R.S. 14:26 and La.R.S. 14:34. On March 20, 1996, after a trial by jury, Defendant was found guilty of aggravated battery and conspiracy to commit aggravated battery.
On May 10, 1996, the district court sentenced Taylor to seventy-eight months at hard labor on the aggravated battery conviction, and thirty-nine months at hard labor on the conspiracy conviction. The sentences are concurrent, but consecutive with any sentence previously imposed.
Defendant now appeals his convictions and sentences. On appeal, defense counsel contends the trial court erred in: (1) refusing the defense's request for a mistrial due to a reference by the State, in opening statements, to the victim being attacked by a "gang of ... criminals, young hoodlums...";[1] (2) allowing photographs of injuries to the victim caused by someone other than the defendant to be admitted into evidence; (3) allowing the State to supplement its discovery with photographs one day prior to trial; (4) refusing the defendant's request for production and submission into evidence of two statements used by the victim to refresh his memory during trial; (5) failing to disclose for review by defense counsel, statements from co-defendants which may be exculpatory for Defendant; (6) refusing defense counsel's request for a mistrial because of the State's failure to disclose exculpatory evidence believed to be in the transcript from State v. Johnson, No. Cr-249-95; (7) allowing into evidence certain hearsay statements of co-defendants; (8) failing to require disclosure and/or production by the State of statements made by a witness and the victim which were inconsistent with their testimony at trial; and, (9) denying the defendant's request for post-conviction bail. Defense also requests that this court review the record to determine if the evidence presented by the State was sufficient to prove Defendant's guilt to the crimes charged beyond a reasonable doubt, and, for errors patent.

ANALYSIS

ERRORS PATENT
La.Code Crim.P. art. 920 provides the scope of review on appeal, as follows:
The following matters and no others shall be considered on appeal:
(1) An error designated in the assignment of errors; and
(2) An error that is discoverable by a mere inspection of the pleadings and proceedings without inspection of the evidence.
In accordance with this article, all appeals are reviewed for errors patent on the face of the record. After a review of the record, we find no errors patent.[2]

SUFFICIENCY OF EVIDENCE
Defendant contends that the evidence presented by the State was insufficient to support a conviction for the crimes charged. In the interest of justice, because insufficiency *1267 is a structural error that would result in the defendant's acquittal, it must be addressed before the trial errors alleged in the other assignments. State v. Hearold, 603 So.2d 731 (La.1992).
When the issue of sufficiency of evidence is raised on appeal, the critical inquiry of the reviewing court is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); State ex rel. Graffagnino v. King, 436 So.2d 559 (La.1983); State v. Duncan, 420 So.2d 1105 (La.1982); State v. Moody, 393 So.2d 1212 (La.1981). It is the role of the fact-finder to weigh the respective credibility of the witness, and therefore the appellate court should not second-guess the credibility determination of the trier of fact beyond the sufficiency evaluations under the Jackson standard of review. See State ex rel. Graffagnino, 436 So.2d 559 (citing State v. Richardson, 425 So.2d 1228 (La.1983)). In order for the State to obtain a conviction, it must prove the elements of the crime beyond a reasonable doubt.
A determination of the weight of evidence presented is a question of fact. The resolution of a matter where conflicting testimony exists requires a determination of credibility of the witnesses and is a matter of weight of the evidence and not sufficiency. Tibbs v. Florida, 457 U.S. 31, 102 S.Ct. 2211, 72 L.Ed.2d 652 (1982). Such a determination rests solely with the trier of fact who may accept or reject, in whole or in part, the testimony of any witness. State v. Nolan, 503 So.2d 1186 (La.App. 3 Cir.), writ denied, 507 So.2d 226 (La.1987).
A fact-finder's discretion will be impinged upon only to the extent necessary to guarantee the fundamental protection of due process of law. Jackson, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560. Where rational triers of fact could disagree as to the interpretation of the evidence, the rational trier's view of all evidence most favorable to the prosecution must be adopted on review. Only irrational decisions to convict by the trier of fact will be overturned. See State v. Mussall, 523 So.2d 1305 (La.1988).
The defendant was convicted under La. R.S. 14:34 which states:
Aggravated battery is a battery committed with a dangerous weapon.
Whoever commits an aggravated battery shall be fined not more than five thousand dollars, imprisoned with or without hard labor for not more than ten years, or both.
"Battery" is defined by La.R.S. 14:33:
Battery is the intentional use of force or violence upon the person of another; or the intentional administration of a poison or other noxious liquid or substance to another.
Defendant was also convicted of conspiracy to commit aggravated battery. Conspiracy offenses are governed, in pertinent part, by La.R.S. 14:26(A):
Criminal conspiracy is the agreement or combination of two or more persons for the specific purpose of committing any crime; provided that an agreement or combination to commit a crime shall not amount to a criminal conspiracy unless, in addition to such agreement or combination, one or more of such parties does an act in furtherance of the object of the agreement or combination.
If the intended basic crime has been consummated, the conspirators may be tried for either the conspiracy or the completed offense, and a conviction for one shall not bar prosecution for the other.
We will first address the aggravated battery charge. On this charge, the record is replete with evidence. The victim, Winston Sheppard, testified that the defendant hit him in the chest where he was wounded. Although no weapon was produced, a photograph of the chest wound, depicting apparent cuts, was introduced at trial. Furthermore, medical testimony indicated the wound was consistent with a blade attack. Eurica Johnson stated that she saw the defendant beating and kicking the victim. She was in her car during the beating, and apparently did not see whether the defendant was holding a weapon. Her brother, Leonard Johnson, *1268 also saw the defendant participate in the beating. He was also at a distance, and did not testify that the defendant had a weapon. This testimony satisfies the elements of the crime, as it shows that the defendant beat and stabbed the victim. The circumstances also suggest the defendant had the requisite "general intent," as he clearly participated in a chase and vicious mob beating. Additionally, he pulled a weapon and stabbed Sheppard in the midst of the melee. Thus, the evidence satisfied the required act and intent elements of aggravated battery.
The defense witnesses, including the defendant, contradicted the prosecution's account, claiming the defendant was nowhere near the beating.
Defendant testified that, after the basketball game, he proceeded up the hill to the area where his friend's vehicle was parked. Defendant further testified that, once on this hill, he witnessed a mob attacking Sheppard. Also, Defendant denied any participation in the beating, kicking or stabbing of Sheppard.
Chris Husband testified that Defendant was not involved in either altercation, the altercation at Eurica Johnson's vehicle or at the edge of the park. Husband further testified that he told Defendant, who was on the basketball court, to stay where he was, away from the altercation. Husband also testified that he kept an eye on the defendant during the event in question.
Various defense witnesses testified that they knew many of the people who lived in the area; there were between 100 and 200 people present at the park on this particular Sunday; and, the number of individuals who chased and beat Sheppard were too numerous to recognize any one person, but Defendant was not one of them. Also, several of these witnesses testified that they did not see Peabody with a stick or Terry "Big Red" Fontenot throw a forty-ounce beer bottle in Sheppard's face causing extensive damage and permanent blindness of his right eye.
Essentially, the trial became a credibility contest between the two sets of witnesses. In his testimony, the defendant never mentioned speaking to Husband. On the contrary, the defendant stated that he noticed Husband near the basketball court while he observed the events from the hill. As previously noted, the fact-finder's determinations will not be disturbed unless found to be irrational. Accordingly, we conclude that the evidence presented by the State was sufficient to support Defendant's conviction for aggravated battery.
As for the conspiracy conviction, the State introduced much testimony about the mob's action against the victim. A number of individuals other than the defendant were named, and their actions described. The prosecution introduced the minutes of Timothy "Peabody" Bradford's guilty plea to aggravated battery, Jermaine Johnson's and Sofola Roberson's convictions for simple battery, and Terry "Big Red" Fontenot's guilty plea to aggravated battery.
As this court has previously explained:
The elements of the crime of conspiracy are (1) an agreement or combination of two or more persons for the specific purpose of committing a crime, plus (2) an act done in furtherance of the object of the agreement or combination. La.R.S. 14:26. An overt act need not be unlawful; it may be any act, innocent or illegal, accompanying or following the agreement, which is done in furtherance of its object. An essential element of the crime of conspiracy is specific intent. Specific intent is defined as the state of mind which exists when the circumstances indicate that the offender actively desired the prescribed criminal consequences to follow his act or failure to act. La.R.S. 14:10(1). Even though intent is a question of fact, it may be inferred from the circumstances of the transaction and the actions of the defendant. The existence of specific intent is an ultimate legal conclusion to be resolved by the trier of fact.
State v. Guillory, 540 So.2d 1212, 1215 (La. App. 3 Cir.1989) (citations omitted).
The legal foundation of a conspiracy conviction is the combination of at least two minds for an unlawful purpose. State v. D'Ingianni, 217 La. 945, 47 So.2d 731 (La. 1950); State v. Joles, 485 So.2d 212 (La.App. 2 Cir.1986). Also, the elements of the crime *1269 of conspiracy can be proven by either direct or circumstantial evidence, even if a defendant has been charged for a completed offense. State v. Evins, 626 So.2d 480 (La. App. 3 Cir.1993).
Evidence supporting the intent element consisted of: (1) Sheppard's testimony that the defendant ran in front of Peabody and said, "It's on," while grabbing his own front pocket; (2) Eurica Johnson's testimony that Defendant ran over to Peabody and patted his own pocket, although she could not hear what was said; and, (3) Leonard Johnson's testimony that the defendant told Peabody they would "get" the victim later. These actions occurred before the attack.
We conclude that, after viewing the evidence in the light most favorable to the prosecution, sufficient evidence to support the conviction for conspiracy to commit aggravated battery existed in the case sub judice.

TRIAL ASSIGNMENTS OF ERROR
Defendant first contends that the district court erred by allowing into evidence a photograph of the victim, depicting injuries inflicted by a third party. Exhibit S-1 shows lacerations inflicted upon the victim when Terry "Big Red" Fontenot hurled a beer bottle into his face. Defendant argued the photograph was irrelevant to the State's case, because the eye injuries cannot be factually linked to him. La.Code Evid. arts. 401 and 402. Further, he contended the photograph served only to prejudice his case and inflame the jury.
The State countered that because there was testimony showing a whole mob of people, including the defendant, viciously beat the victim, there was no way to take separate photographs of which injuries each person inflicted. Also, since the State was attempting to prove conspiracy, photographs of other participants in the mob beating were necessary to the case. The acts of each conspirator in furtherance of a conspiracy are admissible against all co-conspirators. State v. Evins, 626 So.2d 480.
The trial court noted that, on account of the group attack, the photographs were admissible against Defendant, a potential principal, for injuries caused by others during the altercation.[3] Also, separate from the principal theory, the photographs were relevant and admissible under the theory of conspiracy. Thus, this assignment has no merit.
Defendant next alleges that the district court erred in allowing the prosecution to supplement its discovery with photographs the day before trial began.
The record reveals that Defendant filed a motion for discovery in May 1995, to which the State responded in November 1995. On the morning of trial, March 18, 1996, the prosecution filed a motion to introduce the photographs, which had been used in the trial of Jermaine Johnson, a co-defendant who had already been convicted. The pictures, introduced as S-1 and S-2, show the victim's facial cuts and chest wounds, respectively.
The defense, which had received informal notice the day before, objected, alleging surprise/untimeliness and other grounds.
The State argued that the photographs in question were necessary to depict Sheppard's injuries because the other photographs were taken after bandages were applied which concealed the injuries. The prosecution selected two photographs for use in the current trial; neither of which includes the bandages.
Ultimately, the district court ruled the photographs usable, because the defendant failed to show how the use of the pictures surprised him. The court observed the original discovery included photocopies of a number of pictures showing Sheppard's injuries. Too, the State's discovery response explicitly gave Defendant the opportunity to view the photographs and other tangible documents in the State's file. As such, the defense had notice that photographs of the injuries existed and also, the State's intent to admit said *1270 photographs into evidence. Additionally, even if the State's answer to discovery was deficient, reversible error did not occur because the defendant has not demonstrated prejudice. State v. Jones, 474 So.2d 919 (La.1985), cert. denied, 476 U.S. 1178, 106 S.Ct. 2906, 90 L.Ed.2d 992. Accordingly, this assignment is without merit.
Defendant also contends that the district court erred in denying his request for production and submission into evidence of statements used by the victim and Eurica Johnson[4] to refresh their memories while testifying, or which contained inconsistencies.
During cross-examination of Sheppard, the court allowed the witness to refresh his memory from his earlier statements to police. Defense counsel asked the victim whether his initial statement included the incident in which Defendant ran up to Peabody and told him they would "get" Sheppard later, while grabbing his front pocket. When Sheppard expressed some confusion, the court allowed the statement to be furnished to the witness to view his statements to refresh his memory. This occurred even though the witness had not requested to see his prior statements and over the prosecutor's objection.
After refreshing his memory, Sheppard testified that in his initial statement to police, he did not mention the incident. At this point in the proceedings, defense counsel acknowledged he was not entitled to the statements.
However, during the State's redirect, the prosecutor asked about a second statement Sheppard made to police, on June 23, 1995. Defense counsel immediately claimed he was entitled to call for production and offer both statements into the evidence. The trial court observed that the State needed to lay a foundation before the witness could refresh his memory with the statement. This was done; once the witness had refreshed his memory with the second statement, the defendant again claimed he was entitled to the statement. The trial court ruled that Defendant was not entitled to the statements, but allowed the defendant to proffer both statements.
Initially we note that the trial court erred in requiring the State to produce the victim's first statement, during cross-examination of the state's witness by defense counsel. Where the witness did not request the use of the statement, the prosecutor correctly objected, as follows:
The defendant is not entitled through the front door to get witness statements. And I think this is simply a back door effort to get a copy of the statement. This is not a statement that [defense counsel] has nor is entitled to. And I object to his being able to come in through this circuitous manner to get a copy of this statement.
The witness is testifying from his memory. If [defense counsel] has a document, he's entitled to show him the document. I don't think he's entitled to make us now produce all our statements so that [he] can attempt to impeach [the witness] through use of those statements.
I just don't think he's entitled to do that. He is not entitled to the statements up front. He's not entitled, as I appreciate it, to get them through the back door method he's trying to use here.
Notwithstanding the trial court's error, we must now consider if defendant was entitled to production of the statements in question once the witness used the statement to refresh his memory.
Jurisprudence provides that a defendant is entitled to production of a document where a state witness uses it to refresh his memory about a salient fact in the State's case. The Louisiana Supreme Court, in State v. Johnson, 438 So.2d 1091, 1098 (La. 1983), recognized several exceptions to the general rule that the State is not required to produce for inspection statements for use in cross-examination unless:
(1) the witness has physical possession of the report on the stand and testified from it. State v. Latin, 412 So.2d 1357 (La. *1271 1982); State v. Perkins, 310 So.2d 591 (La.1975); or
(2) the witness testified exclusively from his past recollection recorded even though he does not have physical possession of the report on the stand. State v. Latin, 412 So.2d 1357 (La.1982); State v. Banks, 341 So.2d 394 (La.1976); or
(3) it is established that there is an inconsistency between the witness' testimony at trial and his prior statement. State v. Breaux, 366 So.2d 1375 (La.1978); State v. Lovett, 359 So.2d 163 (La.1978).
However, where the witness has already testified to such a key fact from an independent recollection, then refreshes his memory, it appears the defendant is not entitled to the document. See, e.g., State v. Guillory, 502 So.2d 258 (La.App. 3 Cir.), writ denied, 505 So.2d 1140 (La.1987).
It is only when the witness has no independent recollection of what occurred, and his testimony is the product of what he has just read in his report prepared at an earlier time, that the defense is entitled to examine the report for the purpose of cross-examining the witness. (Citations omitted).
Id. at 265 (quoting State v. Hawthorne, 364 So.2d 917, 921 (La.1978)).
The above jurisprudence has been codified in Louisiana Code of Evidence article 612. Article 612 provides, in part, that:
In a criminal case, any writing, recording, or object may be used by a witness to refresh his memory while testifying. If a witness asserts that his memory is refreshed he must then testify from memory independent of the writing, recording, or object. If while testifying a witness uses a writing, recording, or object to refresh his memory an adverse party is entitled, subject to Paragraph C, to inspect it, to examine the witness thereon, and to introduce in evidence those portions which relate to the testimony of the witness.
When a document is used to refresh a witness's memory, article 612 provides a right to the adverse party "to inspect [the document], to examine the witness thereon, and to introduce in evidence those portions which relate to the testimony of the witness." On account of this right granted to an adverse party, it is the trial court's duty to safeguard against this article being manipulated to enable a non-calling party to obtain information that he was not independently entitled to receive.[5] As stated previously, despite the correctness of the objection by the prosecutor, once the trial judge, albeit erroneously, allowed the witness to refresh his memory while on the witness stand, we believe Article 612 became applicable. Although it is a narrow call, we conclude that, unlike the witness in Guillory, 502 So.2d 258, who merely verified a date on a statement, Sheppard's memory was possibly refreshed by his statement; and, testified accordingly. As such, the defendant had a right under Article 612 to access the statements.
However, we conclude that, in the present case, any error associated with the trial court's failure to order production of the statements was harmless and not prejudicial to the defendant. At this point in the trial, Sheppard had already testified regarding the elements of the charged offenses. When the statements were produced, he had already recounted the incident in which the defendant ran up to Peabody while grabbing his own front pocket. Also, the witness had already demonstrated his independent recollection as to the key facts of the case. And, most importantly, we conclude that this event was harmless and not prejudicial because the *1272 exact information, or possible inconsistencies, which the defense sought to elicit was provided through Sheppard's live testimony.
Additionally, Defendant was not entitled to production of the document as a "prior inconsistent statement." On the stand, Sheppard acknowledged that the first statement did not include facts that were in his second statement and his testimony. La.Code Evid. art. 613; State v. Lovett, 359 So.2d 163 (La.1978). He accounted for the omission with the explanation that he was still excited and upset after the incident. Based upon the law cited, this assignment is without merit.
The defendant next contends that the district court erred in not disclosing for review, statements from co-defendants which might have been exculpatory. Also, he contends the lower court erred in failing to grant a mistrial for the State's failure to disclose a transcript of co-defendant Jermaine Johnson's testimony in another proceeding which was allegedly exculpatory.
We note that defense counsel acknowledged, after argument before the bench, that he was not entitled to the transcript of Jermaine Johnson's testimony, given in an earlier proceeding. This part of Defendant's argument is clearly without merit, as such transcripts are public record to which he had access. This type of material, even when allegedly exculpatory, is not within the purview of U.S. v. Bagley, 473 U.S. 667, 105 S.Ct. 3375, 87 L.Ed.2d 481 (1985), or La. Code Crim.P. art. 722, which exists to help the defendant gain exculpatory material that he could not procure on his own. State v. Guillory, 544 So.2d 643 (La.App. 3 Cir.), writ denied, 551 So.2d 1334 (La.1989).
The defendant's brief argument on appeal fails to demonstrate prejudice to his case. Even if a Brady violation did occur, it would not constitute reversible error without actual prejudice to the defendant's case. Brady v. Maryland, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963); see also State v. Johnson, 94-1379 (La.11/27/95); 664 So.2d 94, dissenting opinion, 665 So.2d 1163 (La.12/18/95), reconsideration denied, 671 So.2d 332 (La.4/8/96). As correctly reported in the defendant's brief, a violation is shown by demonstrating that "the favorable evidence could reasonably be taken to put the whole case in such a different light as to undermine confidence in the verdict." Kyles v. Whitley, 514 U.S. 419, ___, 115 S.Ct. 1555, 1566, 131 L.Ed.2d 490 (1995). In his appeal, Defendant has not specified what "favorable evidence" was withheld from him. And also, the jury was made aware that some of the state's witnesses' earlier statements had not mentioned that the defendant had any sort of weapon. Particularly, they knew the victim himself had not made this observation in his first statement. Thus, it is not clear how withholding Sheppard's statements from the defense would "undermine confidence in the verdict."
The record reveals that the court examined in camera the statements and the prosecution's files, as well as, Jermaine Johnson's testimony at his trial, and found there to be no exculpatory information complained of under the Brady doctrine. We find no error in the lower court's determination. Therefore, these assignments have no merit.
Next, Defendant contends that the trial court erred by allowing a certain hearsay statement into the evidence.
During the direct examination of state's witness Eurica Johnson, the following colloquy took place:
Q. Okay. What happened next?
A. Iat the same time as my brother Leonard was like, "Winston, watch out," and Winston turned and still had the baby on his shoulder, and Peabody started to say, "Talk that shit now, mother fucker, you know, I am fixing to whoop your ass."
BY MR. JONES:
Objection, Your Honor. May we approach?
BY THE COURT:
All right.
Defendant argues as if the statement was admitted pursuant to La.Code Evid. Art. 801(D)(3)(b), which states:
A statement is not hearsay if:

*1273 (b) A statement by a declarant while participating in a conspiracy to commit a crime or civil wrong and in furtherance of the objective of the conspiracy, provided that a prima facie case of conspiracy is established;
However, we note that the statement was not admitted under article 801. In overruling defense's objection, the court held as follows:
BY THE COURT:
I am going to overrule the objection. In the Court's view, this is a statement that relates to the state of mind of the witness on the stand. It's not being offered for the truthfulness of this statement, simply to show that the statement was made and that it affected her attitude and the attitude of the victim, and explains their behavior following the statement. And it is admissible as an exception to the hearsay rule, if it's even hearsay.
BY MR. MORTON:
Your Honor, I would like to add for the record that it also falls under the old res gestae.
BY THE COURT:
We are not under the old res gestae. We are now under the new Code of Evidence, and the first three exceptions, 803.1, 2 and 3 are the residue of the old res gestae rule, and I just ruled that it falls under 3, Mr. Morton. All right.
BY MR. JONES:
We object, Your Honor.
BY THE COURT:
Your objection will be noted for record. La.Code Evid. art. 803(3) states, in pertinent part:
A statement of the declarant's then existing state of mind, emotion, sensation, or physical condition (such as intent, plan, motive, design, mental feeling, pain, and bodily health), offered to prove the declarant's then existing condition or his future action. A statement of memory or belief, however, is not admissible to prove the fact remembered or believed unless it relates to the execution, revocation, identification, or terms of declarant's testament.
Initially, we note that article 803(3) should not have been applied to the present case, because the "declarant" referred to in the article is the person making the original statement, in this case "Peabody." See La. Code Evid. art. 803(3), comments (b) and (c), 1996 Authors' Notes (5); see also State v. Gladney, 577 So.2d 1179 (La.App. 2 Cir. 1991); contra Doyle v. Picadilly Cafeterias, 576 So.2d 1143 (La.App. 3 Cir.1991). This article was not intended to allow admission of statements to show the listener's state of mind. Also, the jurisprudence establishes that state of mind must be relevant for article 803(3) to apply. State v. Robinson, 93-905 (La.App. 3 Cir. 3/2/94); 634 So.2d 1274; State v. Owens, 567 So.2d 806 (La.App. 3 Cir.1990), writ denied, 94-1343 (La.8/23/96); 678 So.2d 29. In the present case, Ms. Johnson's state of mind had marginal relevance.
Also, it was inappropriate to apply any sort of "res gestae" exception in a conspiracy case, without employing article 801(3)(b). Although another article, La.Code Evid. art. 801(4) seems, by its very language, to allow the use of such testimony, that article requires that the statement must be "necessary incidents of the criminal act."[6] Using article 801(4) instead of article 801(3)(b) in a conspiracy case undermines the latter article, because article 801(4) does not require the initial prima facie showing of a conspiracy. We find that the evidence presented by the State prior to the statement in question was sufficient to support a prima facie showing of a conspiracy, as required by La.Code Evid. art. 801(3)(b).
For the reasons stated, we find that the trial court did not err in admitting the statement in question. Even if we accepted defendant's position that the trial court had *1274 erred in allowing this statement into evidence, we conclude that this error would be harmless, because there was little likelihood it contributed to the final verdict. Johnson, 664 So.2d 94. The statement had little to do with the defendant, even under a conspiracy theory, and is unlikely to have influenced the jury. Therefore, this assignment is without merit.

DECREE
For the foregoing reasons, Defendant's, Anthony L. Taylor's, convictions and sentences are affirmed.
AFFIRMED.
NOTES
[1] We note that Defendant failed to brief this assignment of error. As such, pursuant to Uniform Rules of Court-Courts of Appeal Rule 2-12.4, it is considered abandoned.
[2] We note that the bill of information contains an incorrect citation, in that conspiracy is cited as La.R.S. 14:27 (attempt), instead of La.R.S. 14:26 (conspiracy). However, the information clearly states the essential facts of the offense charged, and Defendant does not claim surprise or prejudicial lack of notice. Thus, this error is harmless. La.Code Crim.P. arts. 383; 461 et seq., State v. Girouard, 615 So.2d 29 (La.App. 3 Cir. 1993).
[3] La.R.S. 14:24 defines "principals" as follows:

All persons concerned in the commission of a crime, whether present or absent, and whether they directly commit the act constituting the offense, aid and abet in its commission, or directly or indirectly counsel or procure another to commit the crime, are principals.
[4] Although the defendant's brief contains a page reference to Ms. Johnson's testimony, it contains no argument or other mention of her statement. We also note that the record reveals that Eurica Johnson did not view her statement while testifying at trial.
[5] We note that the comments of article 612 recognized the possibility of abuse of this article. Comment (3) of the 1996 Authors' Notes, states:

It is not the intent of this Article to allow a party to circumvent the rules that demarcate the line between discoverable and nondiscoverable material. When a witness for a party uses a document to refresh recollection fairness requires that the adverse party have an opportunity to inspect the document regardless of whether or not he could have obtained it by discovery. It is quite another matter, however, for a party examining an adverse party's witness to ask that the witness be shown a document for the purpose of then requesting an opportunity to inspect a document which was otherwise not subject to discovery. In other words, when it is the non-calling party who requests the witness to consult a document, the court should exercise care in ascertaining that this is not a manipulation of Article 612.
[6] La.Code Evid. art. 801(4) provides, as follows:

(4) Things said or done. The statements are events speaking for themselves under the immediate pressure of the occurrence, through the instructive, impulsive and spontaneous words and acts of the participants, and not the works of the participants when narrating the events, and which are necessary incidents of the criminal act, or immediate concomitants of it, or form in conjunction with it one continuous transaction.