822 So.2d 647 (2002)
STATE of Louisiana
v.
Jason HELOU.
No. 02-77.
Court of Appeal of Louisiana, Third Circuit.
June 5, 2002.
Rehearing Denied July 31, 2002.
*648 J. Wilson Rambo, Louisiana Appellate Project, Monroe, LA, for Defendant/Appellant: Jason Helou.
J.N. Prather, Jr., Assistant District Attorney, Fifteenth Judicial District, Lafayette, LA, for State/Appellee: State of Louisiana.
Court composed of HENRY L. YELVERTON, ULYSSES GENE THIBODEAUX, and BILLIE COLOMBARO WOODARD, Judges.
WOODARD, Judge.
In October 1997, the State charged Mr. Jason A. Helou with second degree battery and simple battery, in violation of La.R.S. 14:34.1 and La.R.S. 14:35, respectively. He waived formal arraignment and pled not guilty. On May 4, 1999, before jury selection, he moved to sever the two counts; the court granted the motion and proceeded with the trial. A six-person jury found him guilty of the second degree battery charge.
Ultimately, the trial court sentenced him to serve three years, at hard labor, with one year suspended and credited him for time served. It acknowledged that the Immigration and Naturalization Service had detained Mr. Helou and recommended deportation, if appropriate. Defense counsel filed a motion to withdraw, which the court granted. Counsel, also, moved for an appeal and for the court to appoint the Louisiana Appellate Project to represent the Defendant, after which, the court requested that counsel submit the motions in writing. On August 2, 2000, the Louisiana Appellate Project moved for an out-of-time appeal, which the trial court granted, as well as a pro se clarification.
Mr. Helou alleges two errors in this appeal: (1) that the evidence presented at trial, when viewed in a light most favorable *649 to the prosecution, is insufficient to sustain the verdict of guilty of second degree battery; and (2) that his sentence is excessive and amounts to cruel, excessive, and unusual punishment, violating Article 1, § 20 of the Louisiana Constitution of 1974. Alternatively, he alleges ineffective assistance of counsel for failing to file a Motion to Reconsider Sentence.

* * * * * *
On September 12, 1997, Mr. Floyd Richard and his wife, Carolina Richard, left the Academy Sporting Goods store in Lafayette, Louisiana, after shopping for clothes and a net. As they walked to their car, a young man, Jeremy Jones, ran past them, saying, "Help me, Mister. There's some people who want to hurt me." Mr. Helou and his two friends, the co-defendants in this matter, chased Mr. Jones, passed the Richards, while screaming, "I'm going to show you what to suck. Come here you little faget." [sic] Offended by their cursing, the Richards asked the three young men to watch their language. Mr. Helou responded, "You want to make something of it, you f____g b___h," and then spat at them. Consequently, Mr. Richard swung at him, and Mr. Helou swung back before he, Mr. Richard, and his friends began to tussle. Eventually, Mr. Helou struck Mr. Richard's nose. Then, his friends jumped on Mr. Richards and continued to beat him until someone yelled that the police were on their way. At that time, the three young men ran towards a car and left the parking lot. Later, an ambulance brought Mr. Richard to the local emergency room, where he received medical treatment for his bloodied nose.

ERRORS PATENT
In accordance with La.Code Crim.P. art. 920, we review all appeals for errors patent. We find two.
First, the court sentenced the Defendant to serve three years, at hard labor, with one year suspended. La.Code Crim.P. art. 893 permits the suspension of imposition or execution of a sentence; however, the court must place a defendant on probation when it suspends the sentence. Its failure to do so, in this situation, results in an illegal sentence. In State v. Willis,[1] we addressed this error patent, stating:
Louisiana Code of Criminal Procedure Article 893 allows a trial judge to suspend imposition or execution of a sentence after a first or second conviction for a noncapital felony, but defendant must be placed on probation. The record shows Willis was not placed on probation as required by Louisiana Code of Criminal Procedure Article 893. The mandatory probation requirement of this provision compels that we must vacate Willis' sentence and remand the case for resentencing pursuant to Louisiana Code of Criminal Procedure Article 893.
(Citations omitted.) Accordingly, we vacate the Defendant's sentence and remand the case for resentencing.
The second error patent involves the trial court's failure to inform him of the prescriptive period to apply for post-conviction relief under La.Code Crim.P. art. 930.8. However, vacating the sentence pretermits this error patent. Nevertheless, we order the trial court to advise him of the time limitations at resentencing.

SUFFICIENCY OF EVIDENCE
In his first assignment of error, the Defendant contends that the prosecution presented insufficient evidence to sustain a guilty verdict for second degree battery.
*650 After Mr. Richard admonished the young men, the Defendant yelled, "You gonna make me shut up, mother f____r or watch my language, mother f___r?" Then, he said "F__k you, b___h" to Ms. Richard. As the Defendant made these comments, he approached the Richards with a closed fist and spit in their direction. In fear of his and his wife's safety, Mr. Richard swung the bag that he had in his hand and hit the Defendant in the neck area or on the side of his head. Although he stumbled, the Defendant continued to advance towards Mr. Richard; his friends encircled him, and the Defendant swung and hit him on the bridge of his nose. Once hit, Mr. Richard stumbled, fell, and attempted to flip the Defendant onto the pavement. Unsuccessful, Mr. Richard sustained a number of blows to his back. When someone yelled, "Let's call the police," the fight ended, and the young men ran away to a vehicle.
Ms. Lori Miller watched the altercation from her car. She testified that she heard yelling and profanity, turned around, and saw three boys chasing another boy. She identified the Defendant as one of the boys, running through the parking lot and stated that, after the one who was being chased escaped, she noticed a couple leaving the store; when the couple heard the vulgar language, they said to the boys, "Watch your language," which made the boys curse even more. She, also, explained that the Defendant walked towards Mr. Richard and blocked him from his vehicle. Then, the other boys surrounded him. Ms. Miller stated that, at that point, the Defendant spit at the Richards. She indicated that the Defendant "... insisted on starting a fight and he continued saying, `You want to make something of it, you f____g b___h. You want to make something of it. Shut your f____g mouth.'"
Ms. Miller's testimony differed, slightly, from the Richards' in that she testified that she remembered the Defendant pushing Mr. Richard after he spat in their direction and that when the Defendant pushed him, he dropped the bag which he was holding. Then, the Defendant delivered a blow to his face. Additionally, she stated that one boy jumped on Mr. Richard's back, while the other two hit his face.
Albeit, the Richards' and Ms. Miller's testimonies had some discrepancies; Jeremy Jones' testimony, completely, contradicted theirs. He said that he never approached the Richards and never told them that he was afraid. Rather, he and Mr. Helou had been engaged in horseplay, in the parking lot, and the Defendant had been yelling some profanities at him and chasing him when "somebody out of the blue just, like, told him to watch his f____g language," to which the Defendant responded, "What the f__k you said?" After that, Mr. Helou and an older guy (Mr. Richard) ran towards each other and fussed at each other. Mr. Jones testified that he saw the man swing a white Academy bag at the Defendant, and then, grabbed the Defendant by the collar or around the shoulder/neck area. At this point, the Defendant hit him, and the two began fighting; the other two young men ran over to break up the fight, but Mr. Richard hit one of them, who struck back. According to Jones, the situation became "chaotic," and he left.
When sufficiency of evidence is raised on appeal, our critical inquiry is whether, after viewing the evidence, in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt.[2] It is the fact-finder's *651 role to weigh the respective credibility of the witnesses; therefore, the appellate court should not second guess the trier of fact's credibility determinations, beyond the sufficiency evaluations under the Jackson standard of review.[3]
The jury convicted the Defendant of second degree battery, a violation of La.R.S. 14:34.1, which provides:
Second degree battery is a battery committed without the consent of the victim when the offender intentionally inflicts serious bodily injury.
For purposes of this article, serious bodily injury means bodily injury which involves unconsciousness, extreme physical pain or protracted and obvious disfigurement, or protracted loss or impairment of the function of a bodily member, organ, or mental faculty, or a substantial risk of death.
Whoever commits the crime of second degree battery shall be fined not more than two thousand dollars or imprisoned, with or without hard labor, for not more than five years, or both.

INTERNAL CONTRADICTIONS IN TESTIMONY
The Defendant argues that the testimony, adduced at trial, contains internal contradictions and irreconcilable conflicts. He notes that Ms. Miller did not state that Mr. Richard hit him with his bag and that she testified that she would disagree with any testimony, indicating that Mr. Richard hit him in the head after he spit in the Richards' direction. Moreover, Ms. Miller explained that the Defendant pushed Mr. Richard, after he spit in their direction:
And I remember Mr. Helou pushed Mr. Richard, because this is how I remember: Mr. Richard had a brown paper bag in his arms and whenever Mr. Richard got pushed, he dropped the bags; and that was something that really caught my attention. The bag fell on the ground and that's what I remember very clearly.
Both, Mr. and Ms. Richard testified that, after the Defendant spit in their direction, Mr. Richard swung and hit him with his bag. However, when asked whether the Defendant pushed her husband before he hit him with the bag, Ms. Richard responded, "Did he push my husband? I couldn't tell you." Oddly, Mr. Jones did not mention whether the Defendant spat in the Richards' direction.
Regarding conflicting testimony, State v. Taylor[4] provides:
A determination of the weight of evidence presented is a question of fact. The resolution of a matter where conflicting testimony exists requires a determination of credibility of the witnesses and is a matter of weight of the evidence, and not sufficiency. Such a determination rests solely with the trier of fact who may accept or reject, in whole or in part, the testimony of any witness.
A fact-finder's discretion will be impinged upon only to the extent necessary to guarantee the fundamental protection of due process of law. Where rational triers of fact could disagree as to the interpretation of the evidence, the rational trier's view of all evidence most favorable to the prosecution must be *652 adopted on review. Only irrational decisions to convict by the trier of fact will be overturned.[[5]]
The State presented the Richards' and Ms. Miller's testimonies as evidence that the Defendant battered Mr. Richard, without his consent, and that he intentionally inflicted serious bodily injury to him. Evidently, the triers of fact accepted portions of the Richards' and Ms. Miller's testimonies and rejected Mr. Jones'. Pursuant to Taylor, we will overturn, only, the trier of fact's irrational decisions. We find that the jury made a rational decision in affording more weight to Ms. Miller's and the Richards' testimonies and that its decision to find the Defendant guilty of a battery on Mr. Richard is, likewise, rational.

SELF DEFENSE
Additionally, the Defendant argues that, under La.R.S. 14:19, he had the right of self-defense. The statute provides:
The use of force or violence upon the person of another is justifiable, when committed for the purpose of preventing a forcible offense against the person or a forcible offense or trespass against property in a person's lawful possession; provided that the force or violence used must be reasonable and apparently necessary to prevent such offense, and that this article shall not apply where the force or violence results in a homicide.
The burden of proving self-defense is addressed in State v. McBride,[6] where we stated:
The burden of demonstrating self-defense rests upon the Defendant. In State v. Hall, this court stated:
In non-homicide cases, such as this, the defendant must carry the burden of proving self-defense by a preponderance of the evidence. The issue of self-defense requires a dual inquiry: (1) an objective inquiry into whether the force used was reasonable under the circumstances; (2) a subjective inquiry into whether the force was apparently necessary.
In McBride, an altercation between the defendant and the victim ended with the defendant cutting the victim's throat. The defendant claimed self-defense, asserting that the victim was the aggressor, much like the Defendant's argument regarding Mr. Richard. After conducting the dual inquiry set out above, the court found:
Defendant's self-defense claim rested upon his own testimony. The jury was left to make a credibility determination, which was entirely within its province. Thus, the jury was free to disregard Defendant's testimony and find that he did not meet his burden in demonstrating justification.[[7]]
In the instant case, the Defendant claimed that he was defending himself against Mr. Richard. However, the trier of fact made a credibility determination and disregarded his argument that he reacted in self-defense to Mr. Richard's hitting him, as its rejection of Mr. Jones' testimony demonstrates.
Furthermore, the Defendant's self-defense argument lacks merit because, initially, he spit in the Richards' direction. Although he raises the argument of retaliation in self-defense, he fails to consider his actions before Mr. Richard struck him *653 with the bag. Our brethren, in the fifth circuit, held that spitting on another constitutes a battery:
We initially note that there is a vacuum in our jurisprudence in the presentation of the exact question of whether one spitting on another constitutes a simple battery. Ergo, the question is res nova. Importantly, however, we turn to LaFave & Scott's "Handbook on Criminal Law," § 81, p. 604, which states:
As indicated above battery is a crime which is defined, like murder and manslaughter, in terms not only of conduct but also of a specified result of conduct. The required result for battery might be termed "bodily injury" so as to include such obvious matters as wounds caused by bullets or knives, and broken limbs or bruises inflicted by sticks, stones, feet or fists. A temporarily painful blow will suffice, though afterward there is no wound or bruise or even pain to show for it. But in addition to these more obvious bodily injuries, offensive touchings (as where a man puts his hands upon a girl's body or kisses a woman against her will, or where one person spits into another's face) will suffice for battery except in a few jurisdictions. (Footnotes omitted.)
We agree.[[8]]
Using the same analysis, we find that the Defendant's actions made him the aggressor. Consequently, we turn to La.R.S. 14:21, which provides that an aggressor cannot claim self-defense:
A person who is the aggressor or who brings on a difficulty cannot claim the right of self-defense unless he withdraws from the conflict in good faith and in such a manner that his adversary knows or should know that he desires to withdraw and discontinue the conflict.
Testimony adduced at trial provided that the Defendant spat at Mr. and Ms. Richard and that he continued to pursue Mr. Richard, after the conflict began. Ms. Miller testified that after the Defendant spat at them, he "insisted on starting a fight[;]" furthermore, after he spat in their direction, he got in Mr. Richard's face. Additionally, Mr. Richard explained that the Defendant spat at them and, then, came towards him:
Mr. Prather:
Q Let's talk about this incident. After Helou came up to you with his fist closed, walking to you, cursing you, did he ever back away and say, "I don't want no trouble?" Did he ever back away?
Mr. Richard:
A No, sir, he didn't.
Q Did he ever turn around and walk away?
A No, sir, he did not.
. . . .
Q He kept coming at you?
A That's right.
We find that the testimony indicates that the Defendant was the aggressor and that he did not attempt to retreat but, instead, continued to pursue an altercation. Therefore, based on the testimonies provided, at trial, pertaining to his self-defense argument, and pursuant to La.R.S. 14:21, we find that sufficient evidence exists to support a finding that he committed a battery and was not acting in self-defense.

SPECIFIC INTENT
Mr. Helou, also, argues that the State did not prove that he possessed the requisite specific intent to commit second degree *654 battery. State v. Hernandez,[9] provides an explanation of the requisites for proof of a second degree battery:
The Supreme Court has recognized that in aggravated battery cases, the charged offense requires proof of general intent, whereas in second degree battery cases the offense requires proof of a specific intent to inflict "serious bodily harm." Serious bodily injury is defined as injury which involves unconsciousness, extreme physical pain, or protracted and obvious disfigurement or protracted loss or impairment of the function of a bodily member, organ, or mental faculty, or a substantial risk of death. Specific criminal intent is defined as that state of mind which exists when the circumstances indicate that the offender actively desired the prescribed criminal consequences to follow his act or failure to act. Thus, the elements of second degree battery are as follows: (1) the intentional use of force or violence upon the person of another, (2) without the consent of the victim, and (3) when the offender has the specific intent to inflict serious bodily injury.
Ms. Miller testified that she saw Mr. Richard receive a blow to his face. Additionally, the fight broke up, only, when an onlooker stated that the police were coming. Once the statement was made, the young men, including the Defendant, immediately, left the scene. Furthermore, Mr. Richard's injuries are indicative of the fact that the Defendant actively desired to inflict serious bodily injury on him. Therefore, we find that the Defendant possessed the requisite specific intent necessary for second degree battery.

SERIOUS BODILY INJURY
Moreover, the Defendant insists that Mr. Richard's injuries do not trigger La. R.S. 14:34.1's application. As a former medic in the army, Ms. Miller offered an opinion regarding the extent of Mr. Richard's injuries. She stated that he had "tremendous amounts of blood on the face" and that "... a lot of blood was protruding from his nose, especially." After watching the fight, she determined that he had sustained "very serious blows to the face." She, also, stated there was a large puddle of blood on the ground, drips across the parking lot, blood covering Mr. Richard's clothing, and spewed blood on his arms. Mrs. Richard testified that Mr. Richard was "bleeding profusely" and that the blood "was just pouring out;" and that there were "pools" of blood on the ground and blood "all over" his shirt. She indicated that she was very worried because her husband had high blood pressure.
In addition, Mr. Richard testified that he had "never bled so much in [his] life;" his shoes were completely covered with blood, the front of his jeans had a lot of blood on them; and the front of his shirt was completely saturated with blood. Notably, the State argued that his nose was not only bloodied, but also, broken; however, there was no testimony or evidence introduced to support this.
Because of the large amount of blood lost, an ambulance transported him to the hospital; however, the record does not provide information concerning the treatment that he received at the hospital, or thereafter, if any. Also, Ms. Richard testified that the bills from the hospital, ambulance, and doctors totaled nine hundred eighty-three dollars and ninety cents ($983.90). The amount of bleeding from Mr. Richard suggests that he suffered a severe blow to his face, specifically, his nose. Furthermore, he noted that, until *655 the day of trial, he thought that his wife was with him in the ambulance, which indicates that, although conscious, he was oblivious to the events around him due to his injury.
Although the Defendant urges that Mr. Richard's injuries are not the kind that trigger La.R.S. 14:34.1's application, in similar matters, jurisprudence demonstrates that Mr. Richard's injuries are comparable to those which are considered to be "serious bodily injury." For example, in State v. Galloway,[10] the first circuit affirmed the defendant's second degree battery conviction, finding that the victim had sustained serious bodily injury. The treating physician stated that the victim sustained a severed lip, experienced intermittent confusion, and lost a great amount of blood. The victim, also, had a large amount of blood in his nose, which was swollen, a large hematoma on his scalp, and mild lacerations to his extremities.
In Hernandez, the fourth circuit upheld the defendant's conviction and found that his actions resulted in serious bodily injuries to the victims. The victims received repeated strikes with an electrical cord. Their injuries included cuts on the nose, shoulder, and finger of one victim; cuts on the right eye and nose area of another victim; and "an elongated laceration in which the skin was broken on the upper left shoulder blade." The case does not provide any indication that the victims sought or received medical care.
Also, in State v. Stowe,[11] the Louisiana Supreme Court upheld the finding that sufficient evidence existed to support a second degree battery conviction. Stowe hit a police officer in the head, knocking him backwards and, thereafter, continued to hit him until the officer pinned him down. The officer suffered an edema and contusion under his right eye, abrasions on his forehead, lip, and under his right eye and contusions and some edema on his forehead. His wounds were cleaned, and his abrasions were treated with Neosporin ointment. Also, the hospital staff instructed him to use an ice pack on his forehead and right eye area. He did not receive any further treatment for the injuries.
Mr. Richard's injuries are comparable to those in the cited cases. The statute defines "serious bodily injury" as "bodily injury which involves unconsciousness, extreme physical pain or protracted and obvious disfigurement, or protracted loss or impairment of the function of a bodily member, organ, or mental faculty, or a substantial risk of death."[12] Although Mr. Richard did not testify regarding his pain, he did, concerning the amount of bleeding that occurred because of the blow to his nose. Furthermore, even though he did not have a broken nose or stitches, other cases have held that the application of Neosporin ointment and ice packs constituted the administration of pain medication. After reviewing the Richards', as well as Ms. Miller's, testimonies regarding how heavily Mr. Richard bled, in addition to his confusion following the altercation, we use the fourth circuit's analysis to find that Mr. Richard's nose was disfigured and that his mental capacities were impaired due to the injuries that he sustained.
Additionally, the State introduced enough evidence to prove that he went to the hospital and received some type of treatment. We find that his injuries are consistent with the injuries that the victims in the cited cases sustained. Thus, the State proved this element of the crime.
*656 Accordingly, we find that the jury's decision to convict the Defendant was rational when it is viewed in a light most favorable to the prosecution.

EXCESSIVENESS OF SENTENCE
Finally, the Defendant alleges excessiveness of sentence. Our decision to vacate his sentence pretermits this assignment of error.

CONCLUSION
For the foregoing reasons, in accordance with La.Code Crim.P. art. 893, we affirm Mr. Helou's conviction, vacate his sentence, and remand the case for resentencing. Additionally, we order the trial court to inform him, at resentencing, of the two-year prescriptive period which La.Code Crim.P. art. 930.8 provides.
CONVICTION AFFIRMED; SENTENCE VACATED AND REMANDED.
THIBODEAUX, J., dissents and assigns written reasons.
THIBODEAUX, J., dissenting.
The Defendant's conduct was reprehensible and unjustifiable. His conviction for second degree battery is equally unjustifiable. I have searched the record for evidence of "unconsciousness, extreme physical pain, or protracted and obvious disfigurement, or protracted loss of impairment of the function of a bodily member, organ, or mental faculty, or a substantial risk of death." My search has been in vain. The victim suffered a bloody nose and the Defendant is being cast as a felon for this injury.
The majority recognizes a lack of unconsciousness. The State concedes no evidence of unconsciousness in its opening statement. That the victim thought his wife was with him in the ambulance is not proof of unconsciousness; it is proof simply of confusion.
Medical or lay evidence concerning physical pain or protracted and obvious disfigurement is lacking. Neither is there evidence of protracted loss of impairment of the function of a bodily member, or mental faculty, or substantial risk of death.
The cases relied upon by the majority are unpersuasive. State v. Hernandez, 96-115 (La.App. 4 Cir. 12/18/96); 686 So.2d 92 does not support "disfigurement" in this case. In Hernandez, the injuries were obvious. The defendant in Hernandez beat the victim with an extension cord. Her face was cut. The victim testified that the injuries to her face and back "burned." She also received a cut on her finger. In fact, the skin on her finger was "peeled all the way back." Id. at 95.
In State v. Stowe, 93-2020 (La.4/11/94); 635 So.2d 168, the victim's eye was swollen nearly completely shut and there were bruises and contusions all over his face, and knots on his head and chin. Additionally, his lip was cut and he suffered severe headaches on a daily basis for two weeks following the fight. The photographs submitted into evidence in Stowe supported that testimony.
In State v. Galloway, 551 So.2d 701 (La. App. 1 Cir.1989), the victim was an elderly male who suffered with diabetes and had undergone open heart surgery. The defendant testified that the victim "knocked me out." Id. at 704. The victim's vision was limited because his eyes were cloudy with blood. Moreover, he was hospitalized and occasionally lost consciousness. He suffered a large hematoma on his scalp near his eye and his lip was totally severed and required several stitches to close it. The physician who testified in Galloway stated that the victim's injuries would have caused him extreme pain.
In this case, the only visible sign of injury, as testified to by the witness, Ms. *657 Miller, was "small minor scrapes on his body." In fact, the injuries were so minor that the victim himself did not wish to call an ambulance.
In short, there is no lay, medical, or documentary evidence to support any of the elements of "serious bodily injury" as required by La.R.S. 14:34.1.
Finally, criminal statutes are to be interpreted with lenity in favor of the accused. All doubts are resolved in favor of the defendant. In interpreting "serious bodily injury" so liberally in favor of the State, the majority abrogates this well-established method of interpreting a criminal statute.
For the foregoing reasons, I respectfully dissent. I would enter a conviction for simple battery and remand for sentencing.
NOTES
[1] 95-316 (La.App. 3 Cir. 10/4/95); 663 So.2d 392.
[2] Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); State v. Duncan, 420 So.2d 1105 (La.1982); State v. Moody, 393 So.2d 1212 (La.1981).
[3] See State ex rel. Graffagnino v. King, 436 So.2d 559 (La.1983), citing State v. Richardson, 425 So.2d 1228 (La.1983).
[4] 96-1043, p. 5 (La.App. 3 Cir. 2/5/97); 688 So.2d 1262, 1267 (citations omitted).
[5] Id. at 1267.
[6] 00-422 (La.App. 3 Cir. 11/15/00); 773 So.2d 849, 853, writ denied, 01-294 (La.2/8/02), 807 So.2d 858 (citations omitted).
[7] Id. at 855.
[8] State v. Lachney, 621 So.2d 846, 847 (La. App. 5 Cir.1993).
[9] 96-115, pp. 4-5 (La.App. 4 Cir. 12/18/96); 686 So.2d 92, 95 (citations omitted).
[10] 551 So.2d 701 (La.App. 1 Cir.1989).
[11] 93-2020 (La.4/11/94); 635 So.2d 168.
[12] La.R.S. 14:34.1.