412 So.2d 1357 (1982)
STATE of Louisiana
v.
Charles Ray LATIN.
No. 81-KA-2287.
Supreme Court of Louisiana.
April 5, 1982.
Rehearing Denied May 14, 1982.
*1359 William J. Guste, Jr., Atty. Gen., Barbara Rutledge, Asst. Atty. Gen., Paul Carmouche, Dist. Atty., Carey T. Schimpf, Dale G. Cox, Asst. Dist. Attys., for plaintiff-appellee.
Jeanette G. Garrett, Richard C. Goorley and Timothy R. Fischer, Shreveport, for defendant-appellant.
NESTOR L. CURRAULT, Justice Pro Tem.[*]
The defendant, Charles Ray Latin, was charged by bill of information with simple burglary, a violation of Louisiana Revised Statute 14:62. After a jury trial which concluded in a guilty verdict, the defendant was sentenced to twelve years at hard labor. It is from this conviction and sentence that the defendant now appeals based on six assignments of error.
Factual Synopsis
On October 1, 1980, William O'Hern, an employee of Continental Floral Green, made a delivery of decorative greens to a florist shop in Shreveport, Louisiana. After making his delivery, Mr. O'Hern returned to his truck, an eighteen wheeler, and discovered Mr. Latin, the defendant, leaning into the cab of the vehicle. The defendant then threw the items he had removed from the truck at Mr. O'Hern's head, and proceeded to run away. Mr. O'Hern gave chase but ended his pursuit when the defendant ran into a thicket. Within seconds, Mr. O'Hern again saw the defendant across the street from his truck motioning for a green and white Chrysler to pick him up on the other side of the thicket. Mr. O'Hern walked closer to the car and told the occupant, a co-defendant, "you better not steal from me" and walked back toward his own vehicle to call the police. A policeman at that time was approaching the scene from the opposite direction. Mr. O'Hern flagged him down, gave him an abbreviated version of the incident, pointed out the vehicle in which the defendants were now leaving the scene and gave the license number of the car. The police officer gave chase, never losing sight of the vehicle, and apprehended the defendants.
Assignment of Error No. 1
By this assignment, the defendant contends that the trial court erred in denying his motion to suppress his oral, unrecorded, inculpatory statement, alleging that such statement was the product of an unlawful arrest.
After the defendant was advised of his rights, Detective Franklin testified:
... he (the defendant) stated to me that he had gone up to this particular location to look for a job with another black male *1360 and he had gotten out of the car and had proceeded up to the building and I don't recall whether he said he had gone in or not but on his way back he had noticed this particular truck, 18 wheeler and he had gone into the truck and taken a bag and some items that were within the truck and noticed that the driver or that there was a white male that began chasing him or was appearing there and began chasing him so he threw the items back at him and started running....
The State argues that the officer had probable cause to effect a legal arrest. We agree.
Louisiana Code of Criminal Procedure Article 213 provides in pertinent part:
A peace officer may, without a warrant, arrest a person when
(3) that peace officer has reasonable cause to believe that the person to be arrested has committed an offense, although not in the presence of the officer.
A warrantless arrest must be based on the arresting officer's reasonable belief that the person to be arrested has committed or is committing an offense. State v. Kenner, 384 So.2d 413 (La.1980).
"Reasonable cause which under Louisiana Code of Criminal Procedure Article 213 is consonant with the probable cause concept, exists when the facts and circumstances known to the arresting officer and of which he has reasonably trustworthy information are sufficient to justify a man of ordinary caution in believing that the person to be arrested has committed a crime; `probable cause' may be judged by the probabilities and practical considerations of every day life on which average men, and particularly, average police officers, can be expected to act." State v. Drew, 360 So.2d 500 (La. 1978) cert. den. 439 U.S. 1059, 99 S.Ct. 820, 59 L.Ed.2d 25 (1978).
In the present case, the officer was stopped by a citizen who claimed he had been "ripped off" and identified the passenger of an automobile fleeing the scene as the perpetrator. The term "ripped off", despite the defense assertion of vagueness, is of such common usage in the vernacular to denote a theft, that no misunderstanding is likely.
The factual circumstances of the victim's complaint coupled with the apparent flight of the accused were sufficient to provide an articulable basis for a warrantless arrest. See State v. Williams, 349 So.2d 286 (La.1977).
Accordingly, the statement given was not the product of an unlawful arrest and was therefore correctly admitted into evidence.
The assignment lacks merit.
Assignment of Error No. 2
By this assignment of error, the defense asserts the trial court erred in not ordering the defendant to be furnished with copies of police reports.
During the testimony of Detective Franklin, he was questioned concerning the oral statement given by the defendant Latin. Although admitting that he testified at trial to a few more details than he had at the preliminary hearing, the officer stated that he was testifying from his memory rather than from a report, although the report would be helpful in refreshing his memory. However, the officer was never formally impeached by the defense pursuant to Louisiana Revised Statute 15:493.
The State is not required to produce police reports of a testifying officer unless
(1) the officer has physical possession of the report on the stand and testified from it. State v. Perkins, 310 So.2d 591 (La. 1978); or
(2) the officer testified exclusively from his past recollection recorded even though the officer does not have physical possession of the report on the stand. State v. Tauzier, 397 So.2d 494 (La.1981); State v. Banks, 341 So.2d 394 (La.1976); and
(3) it is established that there is an inconsistency between the officer's testimony at trial and his report. State v. Carter, 363 So.2d 893 (La.1978).
*1361 In this case, the testimony clearly indicates that Detective Franklin was relying on his memory refreshed by his report. He did not have physical possession of his report when he testified nor did defense counsel make any showing that the officer's testimony differed from his report. Accordingly, the report was properly withheld from defense inspection.
This assignment lacks merit.
Assignment of Error No. 3
The defense urges by this assignment that the trial court erred in not granting a mistrial when the defendant could not recall the victim, Mr. O'Hern, to the stand to testify for the defense, as Mr. O'Hern had left the court after testifying for the State.
The record reflects that although a State subpoena was issued for the witness, it was not served. Mr. O'Hern came to the trial in response to a call by the District Attorney. A defense subpoena was not requested, nor did the defense indicate to the court at the close of Mr. O'Hern's testimony that it desired the witness to be recalled.
The right of a defendant to compulsory process for obtaining witnesses in his behalf is embodied in both the federal and state constitution as well as the statutory law of this state. United States Constitution Amendment 6; Louisiana Constitution Article I, Section 16 (1974); Louisiana Code of Criminal Procedure Article 731. The right to compulsory process is the right to demand subpoenas for witnesses and the right to have those subpoenas served. State v. Mizell, 341 So.2d 385 (La.1976); State v. Dennis, 250 La. 125, 194 So.2d 720 (1967).
Had defense counsel requested a subpoena for the witness at any time, or had the witness been under subpoena and not released by the trial court, this court would look more favorably upon defendant's argument that compulsory process was denied.
The defense further argues in brief that the defendant was denied a fair trial because the absence of O'Hern precluded him from full cross-examination on the issue of identity.
The defendant has no absolute right to recall a witness to the stand for further cross-examination. Such is a matter within the sound discretion of the trial judge. State v. Banks, 362 So.2d 540 (La. 1978); State v. Simmons, 340 So.2d 1357 (La.1976). It is arguable that the procedure would not have been permitted had the witness been present. Mr. O'Hern had been on the stand for over two hours. Much of the testimony had centered around the issue of identification. The victim's testimony was certain as to the identity of the defendant as the perpetrator of the burglary. The apparent disparity between the victim and the police officer as to the location of the victim's identification could be and was amply covered in the closing arguments. Any further testimony by Mr. O'Hern would have been cumulative.
Mistrial is a drastic remedy and, except in instances in which mistrial is mandatory, is warranted only when trial error results in substantial prejudice to the defendant, depriving him of a reasonable expectation of a fair trial. State v. Sepulvado, 359 So.2d 137 appeal after remand, 367 So.2d 762 (La.1978). It is the opinion of the court, considering the factual circumstances and the testimony of the witnesses, that the defendant did not suffer prejudice such as to warrant a mistrial.
This assignment lacks merit.
Assignments of Error Nos. 4 and 5
The defense claimed the trial court erred when it refused to grant a mistrial due to the prosecutor's alleged reference to the defendant's failure to testify during the prosecutor's rebuttal closing argument.
The court's failure to grant a motion for new trial based upon the same argument is additionally cited. In brief, the defendant cites the objectionable portions of the argument as follows:
What burglars or what criminals have never had a pre-planned alibi. Two of them had an alibi. They had an excuse for why they were there. They don't *1362 have to prove anything, but they sure can if they want to. Have you heard any kind of testimony about a job interview? It's not our job to bring in everything, the whole world, too. We have to prove the crime and that's all the evidence we have. It's not our job to bring and prove to you that there was no job interview. There's no testimony or any kind of evidence that he was sleeping or listening to the radio. It's not your job to speculate to what they could have been doing. You heard the evidence. What else could they have been doing. That's all you've got to ask.
But I will give you an explanation just in case you're hung up with the problem of a prior knowledge. We've gone over it briefly. It doesn't require an intent when he drove up there to do it, but it requires intent while it's happening. No explanation has been given you, none available, not even going to say reasonable, there's no explanation at all.
He had to see Mr. Carter go in that truck. He was right there. He had to have. There's no other explanation, so he knows. And he had a pre-arranged reason for being there, both of them. There was two of them gave this story. Yeah, I was there job hunting. Did he get the job? Who knows.
After the jury was instructed and had retired to deliberate, the defense moved for a mistrial on the ground that the State's argument improperly referred to the defendants' failure to testify in their own defense. Louisiana Code of Criminal Procedure Article 770(3). The trial court denied the motion for the following reason:
Well, I think possibly an admonishment to the jury would have been in order had the objection been made contemporaneously which is the way those things are suppose (sic) to be done. Such an objection was not made at the time the remark was made and the jury obviously has been informed by everybody including the Court several times that the accused in any case are not required to testify. They don't have any burden of proof and your request would be denied.
The failure to grant the mistrial motion forms the basis for assignment of error number four. The defendants filed a pro se motion for new trial wherein they sought a new trial because of the prejudice caused by the improper argument. The lower court denied that motion. Such ruling forms the basis for the fifth assignment of error.
Louisiana Code of Criminal Procedure Article 770 provides in pertinent part:
Upon motion of a defendant, a mistrial shall be ordered when a remark or comment, made within the hearing of the jury by the judge, district attorney, or a court official, during the trial or in argument, refers directly or indirectly to:
(3) The failure of the defendant to testify in his own defense;
An admonition to the jury to disregard the remark or comment shall not be sufficient to prevent a mistrial. If the defendant, however, requests that only an admonishment be given, the court shall admonish the jury to disregard the remark or comment but shall not declare a mistrial.
The State argues in brief that the remarks did not, directly or indirectly, refer to the failure of the defendant to testify in his own behalf, but rather taken in the context of the entire closing arguments were essentially references to the fact that the State's case was unrefuted.
References made in closing argument that the State's case stands uncontroverted have been frequently upheld by this Court. See State v. Sims, 346 So.2d 664 (La.1977); State v. Reed, 284 So.2d 574 (La.1973). A statement that the State's theory of the case remains unassailed encompasses the entire case presented by the defense and does not focus on the defendant's failure to take the stand. However, when the defendant is the only person who can dispute the testimony, a reference to the testimony as uncontroverted focuses the jury's attention on the defendant's failure to testify. See State v. Perkins, 374 So.2d 1234, 1237 (La.1979).
*1363 Although we hold that the trial court's reasoning in denying the motion for mistrial is incorrect, the ruling is not in error. See State v. Gaines, 347 So.2d 1153 (La.1977). The defendant or his co-defendant were not the only persons who could have explained their presence at the scene of the incident. If Mr. Latin did indeed have a job interview, the prospective employer could have testified, thereby rebutting the testimony elicited by the State. It is noted, however, that the prosecutor's remarks are improvidentially worded and are perilously close to prohibited comment. In another case, such remarks could constitute reversible error.
For the foregoing reasons, this assignment lacks merit.
Assignment of Error No. 6
By this assignment of error, defendant contends that the judge imposed an excessive sentence in violation of Article I, Section 20 of the 1974 Louisiana Constitution. He also submits that the maximum sentence of twelve years was imposed as punishment for his exercise of his right to trial by jury.
Although the trial judge concedes there is a variance between the sentence offered during plea negotiations and that imposed after trial, the judge stated for the record that at the time of pre-trial conferences, he was unaware of a prior involuntary manslaughter conviction. In brief, the defense argues that the additional involuntary homicide conviction would not justify the increase from four to twelve years, citing North Carolina v. Pearce, 395 U.S. 711, 89 S.Ct. 2072, 23 L.Ed.2d 656 (1969) as analogous. In Pearce, the United States Supreme Court held that the due process clause of the Fourteenth Amendment prohibits a sentencing judge from imposing a new trial, unless new, objective information concerning identifiable conduct on the part of the defendant occurring after the time of the original sentencing proceeding is discovered. There is no merit to the defense contention that the defendant is being punished for proceeding to trial. Using the Pearce standard, cited by the defense in brief, new objective information concerning the defendant's manslaughter conviction was obtained by the judge subsequent to both the plea negotiations and trial. We hold that the discovery of such information along with the opportunity of the trial judge to hear the evidence and judge the attitude and demeanor of the defendant justifies the sentence imposed.
The trial judge is given a wide discretion in the imposition of sentences within statutory limits and the sentences should not be set aside as excessive in the absence of a manifest abuse of his discretion. State v. Spencer, 374 So.2d 1195 (La.1979); State v. Sepulvado, 359 So.2d 137 appeal after remand, 367 So.2d 762 (La.1979).
The trial judge herein adequately complied with Louisiana Code of Criminal Procedure Article 894.1, naming the defendant's extensive criminal record which included convictions for the following: illegal carrying of weapons, theft (2 counts), possession of marijuana, involuntary homicide and simple battery. He concluded that there was an undue risk that during any period of suspended sentence or probation, defendant would commit another crime. Further, the trial judge stated, "You certainly are in need of correctional treatment and any lesser sentence would take away from the seriousness of the crime." He additionally stated for the record that all the factors outlined in Code of Criminal Procedure Article 894.1, not merely the three mentioned, had been considered in order to particularize the sentence to the defendant.
Carefully reviewing the trial judge's reasons for sentencing, we conclude that he did not abuse his wide discretion in imposing the maximum penalty for the offense charged, particularly in view of the extensive conviction record of the defendant.
This assignment of error lacks merit.

DECREE
For the reasons assigned, the defendant's conviction and sentence is affirmed.
NOTES
[*] Judges Nestor L. Currault, Jr. and Fred S. Bowes of the Twenty-Fourth Judicial District Court and Edward A. Dufresne, Jr. of the Twenty-Ninth Judicial District Court participated in this decision as associate justices pro tempore, joined by Chief Justice Dixon and Associate Justices Marcus, Blanche, and Watson.