CIACCIO, Judge.
Defendant, Alton Brown, was indicted for the second degree murder of Bernard Young. R.S. 14:30.1. He was convicted, by a jury, of manslaughter and sentenced to six (6) years at hard labor. R.S. 14:31. Defendant appeals his conviction, relying upon two (2) assignments of error. We affirm the defendant’s conviction and sentence.
On the night of September 1, 1980, at approximately 9:30 p.m., New Orleans Police Officers Donald Rauber and Frank McNeel were called to the scene of a shooting at the residence of Lovie Green, located at 237 North Galvez Street. Upon their arrival, the officers found Ms. Green’s boyfriend, Bernard Young, lying on the porch, suffering from a gunshot wound to the liver and right lung. The officers transported the victim to Charity Hospital where he died. The Galvez Street residence, where the shooting occurred, was occupied by Lovie Green and her six children. The youngest child was fathered by the defendant, Alton Brown. Brown had lived with and supported Green and her six children for many years. Approximately three months prior to this incident the defendant and Ms. Green had parted and the defendant moved out of the house. Ms. Green became personally involved with Bernard Young and according to Ms. Green, Young had begun supporting her prior to his death.
Shortly before this incident, Ms. Green and her companion, Bernard Young, were standing in front of Ms. Green’s residence when the defendant drove up to the house and demanded to talk to Lovie Green. The facts immediately surrounding the shooting are in conflict.
Lovie Green testified that she twice refused to talk to the defendant and that he then exited his vehicle brandishing a double-barreled shotgun. According to Ms. Green she was then pulled inside the residence by her daughter. Ms. Green further testified, as did two of her sons, that no one saw any shots fired but they did hear one loud “bang” followed by a number of smaller “pops”. Ms. Green stated that she did see the victim stagger off the porch and a demand was made by the defendant for the victim to stand up. Immediately thereafter the defendant drove from the scene. Ms. Green and her son went to the victim’s aid and dragged him to the porch to await the arrival of the police.
Alton Brown testified, however, that he had requested to talk to Ms. Green and she told him she would talk to him if he got out of his car. He stated that as he exited his car he noticed a pistol in Bernard Young’s hand and Young ran toward him, firing the gun. The defendant further stated that he ducked back into his car, picked up a loaded shotgun and shot Young once in self defense. Brown testified that Young fell to the ground but he denied telling the victim to stand up. The defendant, who sustained a wound to the arm, drove from the scene. Brown was driving towards the St. Claude General Hospital in order to seek medical care when he encountered Officer Warner and his partner at the corner of North Roman and Bienville Streets. Brown reported the shooting incident and sought the policemen’s assistance in transporting him to the hospital.

Assignment of Error No. 1

The defendant, by this assignment of error, contends that the trial court erred in denying him the opportunity to review the police report, during the trial, in conjunc *409 tion with the testimony of policeman McNeel.
The defendant argues that there was a conflict in the testimony of this policeman and the defendant as to whether the defendant merely fired at his victim with a loaded shotgun or whether the defendant loaded the shotgun first and then fired at the victim. The defendant reasons that this issue is critical to his self defense argument and he was entitled to the report in order to impeach the policeman’s credibility.
As a general rule police reports are confidential and not subject to production. State v. Gabriel, 450 So.2d 611 (La.1984). There are, however, exceptions to this rule, as explained by the Louisiana Supreme Court in State v. Johnson, 438 So.2d 1091 at 1098 (La.,1983):
As a rule, the state is not required to produce for inspection a police report or a prior statement for use in cross-examination of a state witness for impeachment purposes unless:
(1) the witness has physical possession of the report on the stand and testified from it. State v. Latin, 412 So.2d 1357 (La.1982); State v. Perkins, 310 So.2d 591 (La.1975); or
(2) the witness testified exclusively from his past recollection recorded even though he does not have physical possession of the report on the stand. State v. Latin, 412 So.2d 1357 (La.1982); State v. Banks, 341 So.2d 394 (La.1976); or
(3) it is established that there is an inconsistency between the witness’ testimony at trial and his prior statement. State v. Breaux, 366 So.2d 1375 (La.1978); State v. Lovett, 359 So.2d 163 (La.1978).
The defendant maintains that he falls within the second exception, in that the witness testified from his past recollection recorded. We disagree. The colloquy surrounding the request for the police report is as follows:
Q. Did the defendant tell you at Charity Hospital that the shotgun was unloaded and that he then got the shotgun, loaded it, turned and then fired, is that correct?
A. Yes, he did.
MR. MC MAHON:
No further questions.
⅜ j*s # $ sfc #
CROSS EXAMINATION
BY MR. MASINTER:
Q. Do you have notes to that effect?
A. I would imagine so. It’s been quite a while.
Q. Do you have them with you now?
A. No, sir.
Q. This is from memory; right?
A. Yes, sir.
⅜ !fc ⅜! ⅜ ⅜ ⅜
REDIRECT EXAMINATION
BY MR. MC MAHON:
Q. Any notes that you took at that time were incorporated into your police report; is that correct?
A. Yes, sir.
Q. And did you review your police report before you testified today?
A. Yes, sir, I did.
******
RECROSS EXAMINATION
BY MR. MASINTER:
Q. Did you refresh your memory from the police report today?
A. Yes, I did.
Q. What time did you read it?
A. About twelve noon, twelve thirty.
Q. Who gave it to you?
A. The District Attorney.
Q. When you testified today, did you remember what had happened back then from reading the report and it refreshed your memory or you remembered it today by reading the report.
A. From refreshing my memory.
Q. You used the report to refresh your memory.
A. Yes, I did.
Q. Because you had forgotten it?
*410 A. Yes, sir. It had been almost three years. Yes, sir, I did. (TR 156-158)
The testimony elicited from this witness clearly indicates that his present memory was refreshed by the police report and hence, he does not fall within the past recollections recorded exception.
It is apparent that the trial judge reached this same conclusion after making an in camera inspection of the police report and for this reason denied the defendant access to the report. We find no error on the part of the trial court in this regard.
For these reasons this assignment of error lacks merit.

Assignment of Error No. 2

The defendant, by this assignment of error, argues that the State failed to prove its case in that it did not prove beyond a reasonable doubt that the defendant did not act in self defense.
In reviewing the sufficiency of the evidence to support a conviction, an appellate court in Louisiana is controlled by the standard set forth by the United States Supreme Court in Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979). That is, the court must determine whether, viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the defendant guilty beyond a reasonable doubt. Jackson v. Virginia, supra; State v. Fuller, 414 So.2d 306 (La.,1982). Moreover, where the conviction is based upon circumstantial evidence, the evidence must have excluded every reasonable hypothesis of innocence. La.R.S. 15:438. State v. Captville, 448 So.2d 676 (La.,1984).
In this case three state witnesses testified that the defendant stopped at the Green house, exited his car and swung a shotgun across the trunk of his car. He pointed the gun at Ms. Green but she was pulled inside the house by her daughter. The defendant was thus left pointing the gun at Bernard Young who was not holding a gun at the time (although a handgun was found in his vehicle). Two witnesses testified that they heard one loud “bang” followed by a number of smaller “pops”. The victim was then observed, after he was shot, staggering off the porch.
The jury apparently believed these state witnesses and rejected the defendant’s testimony that he acted in self defense.
Thus viewing the evidence in the light most favorable to the prosecution any rational trier of fact could have excluded Brown’s claim of self defense and thus have found him guilty of manslaughter beyond a reasonable doubt.
This assignment of error is, therefore, without merit.
Additionally, we have reviewed the record for errors patent upon its face and we find no such errors. C.Cr.P. Art. 920(2).
For the reasons assigned, the defendant’s conviction and sentence are affirmed.
AFFIRMED.