NOT DESIGNATED FOR PUBLICATION

STATE OF LOUISIANA
COURT OF APPEAL, THIRD CIRCUIT

21-550

STATE OF LOUISIANA

VERSUS

LONNIE B. KIRKLIN, JR.

A/K/A LONNIE BERNARD KIRKLIN, JR.

**********

APPEAL FROM THE
NINTH JUDICIAL DISTRICT COURT
PARISH OF RAPIDES, NO. 341,602
HONORABLE WILLIAM GREG BEARD, DISTRICT JUDGE

**********

BILLY HOWARD EZELL
JUDGE

**********

Court composed of Billy Howard Ezell, Van H. Kyzar, and Candyce G. Perret,
Judges.

AFFIRMED.

**J. Phillip Terrell, Jr.**
**Ninth Judicial District Court District Attorney**
**Kenneth A. Doggett, Jr.**
**Ninth Judicial District Court Assistant District Attorney**
**P.O. Box 7358**
**Alexandria, La 71306-7358**
**(318) 473-6650**
**COUNSEL FOR APPELLEE:**
    **State of Louisiana**

**Cynthia K. Meyer**
**Louisiana Appellate Project**
**P. O. Box 23121**
**New Orleans, LA 70183-0121**
**(504) 444-1910**
**COUNSEL FOR DEFENDANT/APPELLANT:**
    **Lonnie B. Kirklin, Jr.**

**EZELL, Judge.**

Defendant, Lonnie B. Kirklin, Jr., a/k/a Lonnie Bernard Kirklin, Jr., was charged by bill of information with the attempted second-degree murder of S.W., in violation of La.R.S. 14:27 and 30.1.[1]  After a trial by jury, Defendant was found guilty as charged.  The court sentenced him to thirty years at hard labor without the benefit of parole, probation, or suspension of sentence.  Defendant is before this court challenging his conviction and sentence.

## FACTS

Defendant and S.W., the victim, were friends who had become estranged several weeks before the incident at issue.  On November 24, 2018, S.W. received a call from Ke'Asia Williams, a girl that Defendant had dated in the past.  She asked that S.W. come over, and at the time she was located three houses down from where S.W. was located.  Defendant's house was between the two.  As S.W. was riding his bike past Defendant's house to meet Williams, Defendant and his uncle, Justin Sherman, approached S.W. from behind, and Defendant shot S.W. multiple times with a gun he had obtained from his uncle.

## ERRORS PATENT

In accordance with La.Code Crim.P. art. 920, all appeals are reviewed for errors patent on the face of the record.  After reviewing the record, we find there are no errors patent.

---

[1]Defendant was a juvenile at the time of the commission of the offense, but he was tried as an adult.  The juvenile court was divested of jurisdiction upon the filing of the bill of information after a finding of probable cause at the continued custody hearing.  La.Ch.Code art. 305(B)(1)(b).

Initials of the minor victim are being used pursuant to La.R.S. 46:1844(W)(1)(a)).

## ASSIGNMENT OF ERROR NUMBER ONE

Defendant contends the trial court erred in refusing to enforce its order to transport Mr. Sherman, a material witness in the case. On November 16, 2020, defense counsel informed the judge in open court that he had twice subpoenaed Mr. Sherman, a co-defendant who was incarcerated in Bossier Parish.[2] Counsel had been informed that due to Covid, Bossier Parish would not transport the prisoner and that transportation would be the responsibility of Rapides Parish. Counsel said he contacted transportation "here" [Rapides Parish] and was told they would not transfer the prisoner to Rapides Parish due to Covid. The court clerk verified that the witness was subpoenaed. A return was not received, but the clerk confirmed that the subpoena was sent to the Bossier Parish Sheriff's Department for the following day's court date.

Defense counsel requested the court allow Mr. Sherman, whom he referred to as a "material witness," to testify via Zoom. The court denied the request, stating, "I can get him here." Defense counsel requested a continuance with no objection by the State. The court stated, "The court will grant that. The court will also contact DOC, tell them the nature of what the witness is about. That witness is a material witness that needs to be present in court[.]"

The trial was then set for December 7, 2020. Defense counsel asked if there was anything further he needed to do to subpoena Mr. Sherman or whether the court would handle it. The trial court:

> No, sir. The court will handle that matter. I will contact DOC and I've had pretty good luck in getting incarcerated defendants present for hearing that needs to be had. So, I will take that. And as

---

[2]The record indicates a subpoena dated October 6, 2020, was issued for Mr. Sherman to appear in court on October 13, 2020. Another subpoena dated November 5, 2020, was issued for him to appear on November 17, 2020.

soon as I get word back from DOC, I will let both of you know their response. I'm expecting them to say he'll be here.

On December 3, 2020, pursuant to a written motion filed that day, the trial court issued an order for the Bossier Parish Sheriff's Office to release Mr. Sherman to Rapides Parish Sheriff Mark Wood and for Sheriff Wood to transport the witness on or before December 8, 2020, for a court hearing.

On December 7, 2020, the day before jury selection, defense counsel informed the court that a motion to transfer the witness was filed the previous week, and he asked the court to confirm the witness was on his way. The following colloquy then occurred:

> THE COURT: Given the lateness of that filing, the Court didn't reach out to Bossier Parish because of the lateness of it. I asked for that motion a long time ago. And the court is not going to act on it. If you want to late [sic] until the last minute, you'll have to suffer from last minute. Either or both sides, State or the defense. If that motion went through the proper networks, I didn't reach out to Bossier Parish nor DOC because of the lateness of it. We were back here on November sixteenth. And when did that motion get filed, Madam Clerk?

> CLERK: Twelve three.

> THE COURT: Twelve three. Four days before – I don't think anybody can act upon anything that fast.

> MR. WORD: Your Honor, the last time in court, I asked the Court if there was anything I needed to do on my behalf.

> THE COURT: Yes, and I said: File a motion for transport by either side.

> MR. WORD: Okay.

> THE COURT: And the only one I got was from the State, I believe, last week. So, if you want your witnesses here, they need to have the witnesses here.

> MR. SANDERS: Not from the State, from the defense.
> . . . .

3

THE COURT: I apologize, Mr. Sanders, I just saw the motion. So, therefore, if you file that motion on December fourth, you've had plenty of time since November sixteenth to file that motion.

MR. WORD: Yes, Your Honor.

Despite the court's statement that he told the parties a motion for transport needed to be filed, we find no indication in the record that the judge said this. As noted above, on November 16, he stated that he would contact DOC and let the parties know the response. For some reason, on December 3, 2020, defense counsel filed a motion to have Mr. Sherman transported which was granted by the court that day.

Defendant claims that the trial court's refusal to follow through on its agreement to contact DOC, to have Mr. Sherman transported, and to enforce its transport order resulted in a denial of his right to compulsory process and his right to present a defense. For these reasons, he contends his conviction should be set aside. The State contends the issue was not preserved for appeal due to the Defense's failure to object to the trial court's December 7, 2020 ruling.

In *State v. Luna*, 00-858 (La.App. 5 Cir. 10/31/00), 772 So.2d 249, *writ denied*, 00-3244 (La. 10/12/01), 799 So.2d 495, the defendant claimed his rights to present a defense and to compulsory process were denied because the trial court denied his motion to continue based on the absence of witnesses. The state contended that the record did not reflect a motion to continue the trial or a request for recess during trial. Additionally, the state argued no prejudice resulted from their absence because their testimony was not material to the defense presented at trial. The appellate court reasoned:

> A continuance is defined as the postponement of a trial or hearing that is granted before the trial or hearing commences. A recess, on the other hand, is a temporary adjournment of a trial or

4

hearing that occurs after a trial or hearing has commenced. LA.-C.Cr.P. art. 708. A jury trial commences when the first prospective juror is called for examination. LA.-C.Cr.P. art. 761.

In this case, the record does not reflect that the defendant moved for a continuance before trial commenced on the basis that his witnesses were absent. The record reflects the defendant knew how to request a continuance, since he had filed a motion for a continuance of the April 1997 trial date. The defendant could have requested a continuance, but he did not. Rather, the defendant was satisfied to proceed to trial with the court's issuance of instanter subpoenas and attachments for his witnesses, in the event they failed to appear.

The record further reflects that after trial had commenced, the defendant continued to request information on the status of his witnesses. Before opening statements on June 24, 1997, the defendant inquired whether his witnesses had been served. Ms. Davis told the court she would check the record for returns on the subpoenas. When the court asked the defendant if he had any objection to trial proceeding, since the State was going to present its case first, the defendant responded, "No. I don't have any objection to that, Your Honor."

At the end of the day, the court revisited the issue of the defendant's instanter subpoenas. After reviewing the defendant's subpoena list with the trial court's minute clerk and with Ms. Davis, the court ordered that all of the subpoenas were to be reissued for those witnesses who were not served, and that attachments were to be issued for those who had been served.

The next morning after four State witnesses had testified, the defendant advised the court that some of his witnesses still had not been served. He requested "ample time" for the subpoenas to be served and moved that the court consider issuing attachments for those witnesses who had been served, but had still not appeared. The trial court responded that the defendant would be allowed to proffer the absent witnesses' testimony at the end of the day, at which time the court would determine whether it was necessary to issue attachments for any of the witnesses. The defendant thanked the court and did not object to the court's ruling.

The next morning, June 26, 1997, the court inquired on the status of the returns. After discussion between Ms. Davis, the defendant, and the court, it was determined that the record reflected some, but not all of the witnesses had been served. The court issued attachments for those witnesses who had been served but who had not appeared. The defendant proffered the testimony of some of the witnesses. Thereafter, the discussion turned to the issue of jury instructions, and the defendant still did not move to recess trial.

The decision on a motion for recess or continuance lies within the discretion of the trial court and will not be reversed absent an abuse of that discretion. See, *State v. Wille*, 559 So.2d 1321, 1334 (La.1990); *State v. Bailey*, 97-302 (La.App. 5 Cir. 4/28/98), 713 So.2d 588, 609, *writ denied*, 98-1458 (La.10/30/98), 723 So.2d 971. Since the record does not reflect defendant moved for a continuance or a recess, we find that the trial judge's proceeding with trial was not an abuse of discretion.

The defendant additionally complains that he was denied the right to compulsory process by the absence of his witnesses. The right of a defendant to compulsory process is the right to demand subpoenas for witnesses and the right to have those subpoenas served. *State v. Latin*, 412 So.2d 1357, 1361 (La.1982). The right of a defendant to call witnesses on his behalf is guaranteed by the federal and state constitutions and in this state's statutory law. U.S. Const. amend. VI; La. Const. art. I, § 16 (1974). The defendant claims that his right to compulsory process was denied because trial proceeded without his witnesses despite his repeated requests, before and during trial, that his witnesses be subpoenaed.

On June 23, 1997, before trial began, the defendant told the court that he had not had the opportunity to subpoena his witnesses for trial because he did not know that the case was set for trial on that day. The defendant asserts that he was not present in court when the trial date was set. Thus, the minute entry, at least, appears to support the defendant's assertion that he was not present when the June 23, 1997 trial date was set.

LA.-C.Cr.P. art. 702 provides for setting cases for trial as follows:

> Cases shall be set for trial by the court on motion of the state, and may be set for trial on motion of the defendant. Courts shall adopt rules governing the procedure for setting cases for trial and giving notice thereof. The defendant shall be given notice of trial sufficiently in advance thereof so that he may summon his witnesses.

We have reviewed the record and we find that the record indicates the defendant had actual notice of the trial date, through writ dispositions, among other things, even if he were not present when the trial was set. Moreover, as pointed out by the assistant district attorney, the defendant apparently knew that trial was set for June 23, 1997, since one of the defendant's witnesses appeared for trial on that date pursuant to a subpoena issued by the defendant.

Finally, we note that even if the defendant had not been sufficiently notified of trial to timely subpoena his witnesses, reversal

is not necessary in this case. In order to show prejudicial error sufficient to warrant reversal, the defendant must show that the testimony that the witness would have given would have been favorable to the defense and would indicate the possibility of a different result. *State v. Nicholas*, 97-1991 (La.App. 4 Cir. 4/28/99), 735 So.2d 790, *writ denied*, 99-1511 (La.10/29/99), 748 So.2d 1159. In *Nicholas*, the court held the trial court did not abuse its discretion in denying the defendant's oral request to continue the trial in order to subpoena defense witnesses because the absence of the testimony did not prejudice the defendant. *Id*. at 799-800.

In this case, the record reflects that the defendant proffered the testimony of several witnesses. The defendant contends that the testimony of several of these unavailable witnesses would have supported his consent defense by establishing that Ms. W. willingly accompanied him to his apartment, and that she was not visibly upset when she left his apartment. However, even if these witnesses had testified, it would not have bolstered the defendant's consent defense, since Ms. W. herself admitted to the jury that she voluntarily went to his apartment, and she explained that she was only pretending to be calm when she left the defendant's apartment.

Defendant also claims he was prejudiced by the absence of testimony which would have impeached Ms. W.'s testimony as to the availability of seats in the bar. Again, the record reflects that Ms. W. stated she sat next to the defendant because it was the only available seat *at* the bar. She said, however, that there were seats at tables *in* the bar. Thus, the testimony that there were no other seats *at* the bar would only have been cumulative of what Ms. W. had said.

In connection with the defendant's proffer, the trial judge found that the testimony related to what occurred at the bar, not what occurred between the defendant and Ms. W. Although the judge did not specifically so state, the context of his remarks appears to indicate that the judge believed the proffered testimony to be irrelevant. This Court has recognized the right to present a defense does not require a trial court to permit the introduction of evidence that is irrelevant or has so little probative value that it is substantially outweighed by other legitimate considerations in the administration of justice. *State v. Winfrey*, 97-427 (La.App. 5 Cir. 10/28/97), 703 So.2d 63, 76, *writ denied*, 98-0264 (La.6/19/98), 719 So.2d 481; *State v. Carter*, 96-358 (La.App. 5 Cir. 11/26/96), 685 So.2d 346, 351.

We find that the defendant was not denied the rights to present a defense or the right to compulsory process because of his apparent knowledge of the trial date, his failure to file a continuance, and his failure to move for a recess. We further find that defendant was not prejudiced by the absence of testimony from the absent witnesses

7

because their alleged testimony was either cumulative or immaterial. *State v. Nicholas, supra.*

*Id.* at 255-57.

In the present case, it is clear defense counsel was aware on November 16, 2020, of the rescheduled December 7, 2020 trial date. He also knew how to request a continuance as he had done so at the November 16, 2020 hearing. On December 7, 2020, the first day of trial, the parties asked that the trial be "bound over" until the following day. Shortly thereafter, when defense counsel learned that the trial court did not contact DOC or Bossier Parish to secure Mr. Sherman's attendance, and there was no mention of enforcement of the transfer order, defense counsel did not request a continuance of trial.

Further, as stated in *Luna*, 772 So.2d at 256, "[i]n order to show prejudicial error sufficient to warrant reversal, the defendant must show that the testimony that the witness would have given would have been favorable to the defense and would indicate the possibility of a different result." Defendant did not proffer the testimony of the unavailable witness as was done in *Luna* to allow the trial court or this court to assess materiality. Additionally, on appeal, he does not offer any indication of how Mr. Sherman's testimony would have been favorable to the defense, resulting in the possibility of a different outcome at trial. Under the circumstances presented, we find there is no abuse of discretion in the trial court's proceeding with trial, and this assignment of error has no merit.

## ASSIGNMENT OF ERROR NUMBER TWO

Defendant contends the trial court erred in denying the motion to suppress the evidence seized from his phone during a warrantless search. Prior to trial,

Defendant filed a written motion to suppress. A hearing on the motion was held August 26, 2019.

On appeal, Defendant concentrates on the fact that Detective Terrance Howard was able to question the sixteen-year-old Defendant after he previously invoked his right to silence when he did not give a statement regarding the shooting. Defendant contends he had no parent/adult present at the time he gave the passcode for his phone, and he was tricked into providing the passcode when Detective Howard asked him if there was information on the phone that could "prove his innocence." Thus, Defendant contends there was no valid consent exception to the warrant requirement proven. Further, Defendant contends Detective Howard's testimony at trial differed from that given at the suppression hearing because at trial he said that the text message on Defendant's phone was seen the night he was taken into custody, not after the custody hearing (days later) as he stated at the suppression hearing. Thus, Defendant contends the record indicates that there was no consent to search Defendant's cell phone at the time the search of the phone was conducted, and Defendant's conviction should be vacated as the introduction of this text message was a crucial piece of evidence in his case.

The State argues in brief that both Detectives Bobby Branton and Howard testified at the suppression hearing that although Defendant, once taken into custody and *Mirandized*, failed to give a recorded statement, he continued to speak with the detectives, denying his involvement in the shooting. Further, the State asserts that Detective Howard testified that the following day, at the show cause hearing, Defendant, represented by counsel, indicated that Ariyana Bayonne was a possible witness to prior shootings and that at that time, Defendant consented to a search his phone. Detective Howard testified that he presented a consent form

which Defendant signed, and Defendant provided the passcode.  Detective Howard then proceeded to Defendant's mother's residence and had her sign the consent form as well. According to the State, the consent form was signed by both Defendant and his mother, and after these consents were given, the phone was searched.

At the suppression hearing, Detective Branton testified that on November 24, 2018, he was called out to a shooting incident.  Upon arrival, the initial respondent, Officer Lewis, told him that earlier in the day, he responded to a complaint by Defendant of S.W. firing shots.  Then later that day, Officer Lewis was dispatched to the shooting of S.W. near the home of Defendant and his mother.  At the scene, Detective Branton first spoke to Defendant as he was entering a vehicle to leave with his grandmother, Carrie Kirklin, and Mr. Sherman. He was questioned a second time at the Alexandria Public Safety Complex after being transported there by an officer.  Defendant denied shooting S.W., but he was subsequently arrested by Detective Howard.

Detective Branton explained that a search warrant was written on November 28, for a house located at 5617 Bluebonnet Road.  This residence was listed because the truck which was parked there (that Defendant was going to leave the scene in) was registered to Ms. Kirklin at that address. The search warrant indicated that in a text message, Defendant asked his uncle for a "rod" which is slang for a gun.  During the subsequent search of the home on Bluebonnet, Mr. Sherman was found lying down on the couch, and a .380 caliber gun was found in the couch.  According to Detective Brandon, a .380 had been used in the shooting.

Detective Branton testified that the shooting was on November 24, and it was November 25, by the time they interviewed Defendant and got the search

10

warrant.  During the interview, Defendant was advised of his *Miranda* rights, consulted with his mother, Verlan Bush, and he refused to give a recorded statement.  However, Detective Howard explained that although Defendant did not give a recorded statement that night, they did have a conversation in the interview room.

Detective Howard's testimony gave more detail on the search of the cell phone.  He stated that Defendant sent a text message to his uncle, Mr. Sherman, asking him to bring him a gun or that he needed a gun.  Detective Howard explained that the way he saw the text was that Defendant told him he did not shoot the victim, and that he was with Ms. Bayonne.  Detective Howard asked if Defendant had any messages to support that.  Defendant provided the password to his phone and "gave consent" for the phone after his "show cause hearing" in juvenile court.  Detective Howard explained:

> Like I said, we were at his show cause and he was saying that – I want to say it was Ms. Sanders that was appointed to represent him in his juvenile show cause.  We had a discussion there and he said that he had no problem giving consent to the phone.  That's when he named Ms. Bayonne as a possible witness to the previous shootings.  And I did go back out that same day after the show cause to look for evidence that there was a shooting.  He advised that one was on Third Street near the Chi-Town.  Just prior to Chi-Town – he advised that one was actually on the street.  That's the one that Ms. Bayonne supposedly witnessed.  And I did get a statement from her.  But if you read over her statement, she advised that the shooting actually happened around the corner and Mr. Kirklin was at her house.

Detective Howard testified that they had Defendant's cell phone from the time he was taken into custody, and Defendant gave his consent to search and the passcode for the phone after the show cause hearing.  According to Detective Howard, the password was written on the consent form below Defendant's signature.  Because Defendant's mother had already left the show cause

proceeding when Defendant gave his consent to search the phone, Detective Howard took the form to Defendant's mother at her residence for her signature. His mother then gave her consent before police "went through the phone." Detective Howard identified the consent to perform a cell phone search that was signed by Ms. Bush on November 27 as Defendant's parent/custodian. He explained that he was unsure who the owner of the phone was, so he got the consent of both Defendant and his mother. Discovered on the phone was the text message thread with his Mr. Sherman concerning the gun.

At the hearing, S-1, a cellular phone permission for search and seizure, was introduced. A copy of S-1 was requested by this court from the clerk's office of the lower court as it was not contained in the record forwarded to this court. We were informed that the clerk's office could not locate S-1; accordingly, we requested and received an affidavit executed by the State indicating that the document introduced as S-1 was a "Cellular Phone Permission for Search and Seizure" executed by Detective Branton, witnessed by Detective Howard, and signed by Ms. Bush on November 27, 2018. This was not disputed by defense counsel.

In denying the motion to suppress, the trial court found that the consent signed by Defendant and his mother to allow a search of the phone was a recognized exception to the search warrant requirement.

Subsequently, at trial, Detective Howard testified that on the night of the shooting, he went to the police department where Defendant had been taken after having been detained at the scene by Corporal William Lewis and Detective Branton. He allowed Defendant and his parents to talk privately. He then advised Defendant of his *Miranda* rights in the presence of his parents. They did not talk

12

about the incident; rather, they talked about some of the problems Defendant had been having with the victim and some prior incidents which had occurred. Detective Howard testified that Defendant did not speak of anything else at that time. However, he did briefly speak with Defendant at a probable cause hearing. They were speaking about Ms. Bayonee being with Defendant at the prior incidents that had occurred between him and S.W. They talked about him being innocent and who could prove his innocence. At that time, Defendant consented to a cell phone search. The cell phone had been collected by Detective Branton. A search of the cell phone revealed a text message between Defendant and Mr. Sherman wherein Defendant asked for his uncle to bring him his rod, which Detective Howard explained is a term frequently used by juveniles to refer to a gun. When asked whom Defendant sent the message to, Detective Howard responded:

> His uncle, Mr. Justin Sherman. We saw the message [on] the night Mr. Kirklin was taken into custody. They said that while they were tending to [S.W.], they saw Mr. Kirklin walk out of his residence, which was two or three houses down from where the incident occurred to get in the vehicle, I believe, it was his grandmother and his uncle, Mr. Justin Sherman.
>
> . . . .
>
> Mr. Kirklin was the only party that was detained that night. The grandmother and Mr. Sherman actually drove off in the vehicle that night.

Detective Howard testified that he spoke with S.W. on December 5, after he recovered. S.W. said he heard shots, and when he looked back, he saw Defendant and Mr. Sherman running away with Defendant holding the gun. Detective Howard testified that he arrested Defendant based on the victim's identification of

13

Defendant captured on Officer Tiffany Cox's body camera while she was visiting him in the hospital.

We find there is no error in the trial court's ruling allowing the cell phone evidence seized from Defendant's cell phone to be introduced at trial.

> As a general rule, an appellate court may review the testimony at trial in determining the correctness of the trial court's pre-trial ruling on a motion to suppress. *State v. Green*, 94-0887, p. 11 (La.5/22/95), 655 So.2d 272, 280; *State v. Brooks*, 92-3331, p. 10, (La.1/17/95), 648 So.2d 366, 372; *State v. Martin*, 595 So.2d 592, 596 (La.1992). This review may provide supplemental information relevant to the suppression issue. *See, e.g., State v. Beals*, 410 So.2d 745, 747 (La.1982) ("Accordingly, we have taken into consideration the fact that defendant was the resident of the premises named in the search warrant.")(footnote omitted). It may also disclose conflicting testimony relevant to the credibility of the witness. *Martin*, 595 So.2d at 596 ("We have considered [the witness's] testimony at the suppression hearing and his subsequent trial testimony, the latter completely at odds with the former.").

> However, in many cases the testimony at trial often may not diverge from the evidence adduced at a pre-trial hearing on a motion to suppress. *See, e.g., State v. Chopin*, 372 So.2d 1222, 1223, n. 2 (La.1979) ("Since the evidence adduced at trial does not affect the result we reach in the instant case, our relation of the pertinent facts is based only upon the testimony given at the suppression hearing."); *State v. Schmidt*, 359 So.2d 133, 134, n. 2 (La.1978)(same). An appellate court is therefore not required to review the testimony at trial in every instance. In the present case, if the court of appeal finds that it cannot resolve the suppression issue on the basis of the testimony offered at the hearing on the motion, which both the state and defendant have used as the basis for arguing the merits, as an alternative to dismissing the defendant's appeal, the court should exercise its authority under La.C.Cr.P. art. 914(D) to designate additional portions of the transcript "necessary for full and fair review of the assignment of errors."

*State v. Sherman*, 04-1019, pp. 1-2 (La. 10/29/04), 886 So.2d 1116, 1116 (per curiam)(alteration in original).

Before searching a cell phone seized incident to arrest, a warrant is required.

*Riley v. California*, 573 U.S. 373, 134 S.Ct. 2473 (2014). In *State in the Interest of*

14

*T.L.*, 17-579, p. 19 (La.App. 5 Cir. 2/21/18), 240 So.3d 310, 325-26, the court discussed consent as an exception to the warrant requirement:

> Consent to search is an exception to the warrant requirement when it is freely and voluntarily given by a person who possesses authority or other sufficient relationship to the premises or other effects sought to be inspected. *United States v. Matlock*, 415 U.S. 164, 171, 94 S.Ct. 988, 39 L.Ed.2d 242 (1974); *State v. Edwards*, 97-1797 (La. 7/2/99); 750 So.2d 893, 901, *cert. denied*, 528 U.S. 1026, 120 S.Ct. 542, 145 L.Ed.2d 421 (1999); *State v. Gomez*, 01-717 (La. App. 5 Cir. 11/27/01); 802 So.2d 914, 918. If the State relies on consent to justify a warrantless search, it has the burden of proving the consent was given freely and voluntarily. *State v. Cambre*, 04-1317 (La. App. 5 Cir. 4/26/05); 902 So.2d 473, 479-80, *writ denied*, 05-1325 (La. 1/9/06); 918 So.2d 1039. Oral consent is sufficient and written consent is not required. Voluntariness of consent is a question of fact which the trial court is to determine based on the totality of the circumstances. *State v. Gomez*, 06-417 (La. App. 5 Cir. 11/28/06); 947 So.2d 81, 86. A trial court's factual determinations are entitled to great weight on appellate review. *State v. Gibson*, 97-1203 (La. App. 5 Cir. 3/25/98); 708 So.2d 1276, 1281.

In the present case, the testimony established that prior to Defendant's cell phone being searched, his consent, as well as his mother's consent, was obtained. Although there were several references to a written consent form being signed by Defendant, this was not introduced in evidence at the suppression hearing. However, as discussed in *T.L.* above, written consent was not required. Considering that the State proved both Defendant (orally, at least) and his mother (in writing) consented to a search of his cell phone prior to the search, an exception to the warrant requirement was established. Additionally, we note that even if an error had occurred, the error would be harmless considering S.W. testified at trial that Defendant was the person who shot him. We find this assignment of error has no merit.

## ASSIGNMENT OF ERROR NUMBER THREE

Defendant contends the trial court erred in denying the jury's request to view certain evidence. During deliberations, the jury requested to review "all of the text messages," Instagram posts, and police reports. The trial court denied the request due to the testimonial nature of the evidence despite the defense's argument that screen shots of the text messages and Instagram posts were photographs which the jury is entitled to see pursuant to La.Code Crim.P. art. 793.

Louisiana Code of Criminal Procedure Article 793(A) provides:

> Except as provided in Paragraph B of this Article, a juror must rely upon his memory in reaching a verdict. He shall not be permitted to refer to notes or to have access to any written evidence. Testimony shall not be repeated to the jury. Upon the request of a juror and in the discretion of the court, the jury may take with it or have sent to it any object or document received in evidence when a physical examination thereof is required to enable the jury to arrive at a verdict.

In brief, Defendant contends it appears that the jury was requesting to see the screen shots of the messages and posts admitted into evidence as Defense Exhibits D-3 through D-6.[3] These exhibits were screen shots of messages between Zakira Anderson and Malik Hampton introduced by the defense during Ms. Anderson's testimony. Ms. Anderson, treated as an adverse witness, was asked leading questions in which counsel read the contents of the messages, and she affirmed that the statements were made.

Ms. Anderson testified that she was interviewed by Detective Howard concerning the shooting of S.W., and Detective Howard obtained Instagram messages from her Instagram page. In the messages exchanged between the two,

---

[3]We note the only other text message introduced at trial was introduced by the State and was the text exchange between Defendant and his uncle concerning the gun. It appears this was also encompassed within the jury's request, but obviously, the court's refusal to allow viewing of that piece of evidence by the deliberating jury is not a topic of contention on appeal. Defendant's argument is limited to the court's refusal to allow viewing of D-3 through D-6 only.

Mr. Hampton responded to her, "I got one from Grizzy. What's happening." Ms. Anderson said, "Malik, I need it for real . . . I want this n----- [S.W.] gone." Mr. Hampton replied, "On my grandma . . . Nah you ain't touching no gun." In a continuation of the conversation, Ms. Anderson said, "You gotta promise me you're going to handle that for me, Malik." He replied, "I promise." She then told him that she loved him, and he told her to "[w]atch how this s--- turns out." Ms. Anderson told Mr. Hampton that he was scaring her, and he responded, "I'm going to jail." Ms. Anderson said she wanted him gone, and then said, "[f]--- that, he ain't got a dime. But I want him to feel pain."

In *State v. Doucet*, 17-200 (La.App. 5 Cir. 12/27/17), 237 So.3d 598, *writ denied*, 18-77 (La. 10/8/18), 253 So.3d 789, *writ denied*, 18-196 (La. 11/5/18), 255 So.3d 1052, *cert. denied*, ___ U.S. ___, 139 S.Ct. 2676 (2019), the defendant challenged the trial court's ruling allowing the jury to view the rape victim's drawings during its deliberations. Specifically, the defendant argued that the drawings amounted to testimonial evidence because they depicted the victim's thoughts, feelings, and emotions which duplicated her trial testimony. In finding that the jury was allowed access to written evidence for its verbal content, in violation of La.Code Crim.P. art. 793, the court reasoned:

> In this case, our review reveals that the trial judge erred by permitting the jury to view State's Exhibit 18 during jury deliberations. That exhibit contained numerous writings that duplicated the victim's testimony by written words contained on that page. As such, we find that the jury could have viewed the exhibit for its verbal contents, i.e., the victim's feelings and emotions about defendant wanting to kill her, about going to court, and about committing suicide, which she had testified about at trial. Thus, when the trial judge allowed the jury to view this document with the victim's writings, the jury was allowed "access to . . . written evidence" for its verbal content, which is prohibited by La. C.Cr.P. art. 793.

17

*Id.* at 609.

Although the fifth circuit concluded that the trial court erred, it found the error harmless because the exhibit viewed during deliberations did not depict the offense nor any significant fact or element of the crime. Further, the court noted that without viewing the exhibit, a rational trier of fact could have found sufficient evidence to support the defendant's conviction.

Louisiana Criminal Code Article 793 prohibits "'access to any written evidence' for its verbal content and prohibits the repeating of testimony to jurors during deliberations." *State v. Brooks*, 01-785, p. 2 (La. 1/14/03), 838 So.2d 725, 727. Here, it appears the jury's purpose for viewing these exhibits would solely be for the examination of the verbal contents. Additionally, the contents of the messages were elicited during Ms. Anderson's testimony, and thus, viewing would be repetitious. We find the trial court did not err in refusing to allow the jury to view these exhibits during deliberations, and this assignment of error has no merit.

**ASSIGNMENT OF ERROR NUMBER FOUR**

Defendant contends his thirty-year sentence is constitutionally excessive. No motion to reconsider sentence was filed; thus, review is limited to a bare claim of constitutional excessiveness performed in the interest of justice. La.Code Crim.P. art. 881.1; *State v. Davis*, 06-922 (La.App. 3 Cir. 12/29/06), 947 So.2d 201.

> Louisiana courts have laid out the following guidelines with regard to excessive sentence review:
>
> > Sentences within the statutory sentencing range can be reviewed for constitutional excessiveness. *State v. Sepulvado*, 367 So.2d 762 (La.1979). In *State v. Barling*, 00-1241, 00-1591, p. 12 (La.App. 3 Cir. 1/31/01), 779 So.2d 1035, 1042-43, *writ denied*, 01-838 (La. 2/1/02),

18

808 So.2d 331, a panel of this court discussed the review of excessive sentence claims, stating:

> La. Const. art. I, § 20 guarantees that, "[n]o law shall subject any person to cruel or unusual punishment." To constitute an excessive sentence, the reviewing court must find the penalty so grossly disproportionate to the severity of the crime as to shock our sense of justice or that the sentence makes no measurable contribution to acceptable penal goals and is, therefore, nothing more than a needless imposition of pain and suffering. *State v. Campbell*, 404 So.2d 1205 (La.1981). The trial court has wide discretion in the imposition of sentence within the statutory limits and such sentence shall not be set aside as excessive absent a manifest abuse of discretion. *State v. Etienne*, 99-192 (La.App. 3 Cir. 10/13/99), 746 So.2d 124, *writ denied*, 00-0165 (La.6/30/00), 765 So.2d 1067. The relevant question is whether the trial court abused its broad sentencing discretion, not whether another sentence might have been more appropriate. *State v. Cook*, 95-2784 (La. 5/31/96), 674 So.2d 957, *cert. denied*, 519 U.S. 1043, 117 S.Ct. 615, 136 L.Ed.2d 539 (1996).

Further, in reviewing the defendant's sentences, the appellate court should consider the nature of the crime, the nature and background of the offender, and the sentences imposed for similar crimes. *State v. Lisotta*, 98-648 (La.App. 5 Cir. 12/16/98), 726 So.2d 57 (citing *State v. Telsee*, 425 So.2d 1251 (La.1983)), *writ denied*, 99-433 (La.6/25/99), 745 So.2d 1183. In *State v. Smith*, 02-719, p. 4 (La.App. 3 Cir. 2/12/03), 846 So.2d 786, 789, *writ denied*, 03-562 (La. 5/30/03), 845 So.2d 1061, a panel of this court observed that:

> While a comparison of sentences imposed for similar crimes may provide some insight, "it is well settled that sentences must be individualized to the particular offender and to the particular offense committed." *State v. Batiste*, 594 So.2d 1 (La.App. 1 Cir.1991). Additionally, it is within the purview of the trial court to particularize the sentence

> because the trial judge "remains in the best position to assess the aggravating and mitigating circumstances presented by each case." *State v. Cook*, 95-2784 (La. 5/31/96), 674 So.2d 957, 958[, *cert. denied*, 519 U.S. 1043, 117 S.Ct. 615, 136 L.Ed.2d 539 (1996)].
>
> *State v. Soileau*, 13-770, 13-771, pp. 4-5 (La.App. 3 Cir. 2/12/14), 153 So.3d 1002, 1005-06, *writ denied*, 14-452 (La. 9/26/14), 149 So.3d 261 (first alteration in original).
>
> Furthermore, in *State v. Baker*, 06-1218 (La.App. 3 Cir. 4/18/07), 956 So.2d 83, *writ denied*, 07-320 (La. 11/9/07), 967 So.2d 496, *writ denied*, 07-1116 (La. 12/7/07), 969 So.2d 626, this court adopted the fifth circuit's three factor test from *State v. Lisotta*, 98-648 (La.App. 5 Cir. 12/16/98), 726 So.2d 57, *writ denied*, 99-433 (La. 6/25/99), 745 So.2d 1183, which established that an appellate court should consider the nature of the crime, the nature and background of the offender, and the sentences imposed for similar crimes. Because Defendant's motion to reconsider lacked specificity and merely sought reconsideration of his sentences, we review Defendant's claim as a bare excessiveness claim under *Baker*.

*State v. Toucheck*, 19-557, pp. 3-4 (La.App. 3 Cir. 12/30/19), 288 So.3d 281, 283-84 (alteration in original).

In *Toucheck*, this court upheld a thirty-year sentence imposed for the first-offender defendant's attempted second-degree murder of his girlfriend. Before turning the knife on another person who attempted to help his girlfriend, the defendant stabbed her multiple times and kicked and stomped her causing broken ribs and lung lacerations.

In *State v. Watson*, 46,380 (La.App. 2 Cir. 6/22/21), 71 So.3d 479, the appellate court upheld a thirty-four-year sentence imposed on a sixteen-year-old, first-time felony offender where the sentencing court felt a lesser sentence would deprecate the defendant's actions of nearly taking the life of the twenty-one-year-old victim.

For his conviction of attempted second degree murder, Defendant faced a sentence of hard labor for not less than ten nor more than fifty years without benefit of parole, probation, or suspension of sentence. Defendant, a first offender, was sentenced to thirty years at hard labor without benefit of parole, probation, or suspension of sentence, a slightly above mid-range sentence.

Prior to sentencing Defendant, the trial court provided reasons supporting the sentence it was about to impose. It said that it saw no remorse demonstrated by Defendant for his crime's impact on the victim. It noted that S.W. was shot five times, leaving no doubt that Defendant acted with the intent to kill. The injuries inflicted by Defendant were life-threatening, and the victim required three surgeries to save his life. Thus, he suffered great physical harm along with the mental and emotional trauma of being shot. The trial court noted for the record that Defendant had been charged with simple battery while incarcerated, and although there was a high probability he could live a productive life upon release, given his young age, a structured custodial environment was needed for the development of life skills. The trial court went on to find that there was an undue risk that during a suspended sentence or probation, Defendant would commit another crime. The court also felt that a lesser sentence would deprecate the seriousness of the crime, noting the only thing worse would have been murder. The aggravating factors noted by the court were: the offender's act of shooting the victim during the commission of the offense manifested deliberate cruelty to the victim causing serious harm; the offender shot the victim five times; the offense resulted in a significant permanent injury or economic loss to the victim due to him having to undergo three separate surgeries in which all bullets could not be removed from his body; the offender used a gun in the commission of the offense;

the offender endangered human life by discharging a firearm; the offender used a firearm while attempting to commit the offense; and a juvenile used and possessed a weapon. The mitigating factors noted were Defendant's lack of criminal history and his youthful age.

Under the facts presented in this case, the trial court did not abuse its great discretion in imposing a thirty-year hard labor sentence on Defendant for the attempted second-degree murder of S.W.

## CONCLUSION

Defendant's conviction and sentence is affirmed.

**AFFIRMED.**

This opinion is NOT DESIGNATED FOR PUBLICATION.
Uniform Rules—Courts of Appeal, Rule 2-16.3.